

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-22-2007

# Snyder v. Bazargani

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3817

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Snyder v. Bazargani" (2007). *2007 Decisions.* Paper 894.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/894

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 06-2396, 05-4051 and 05-3817

KENNETH SNYDER; JACQUELINE SNYDER
Appellees in Nos. 06-2396, 05-4051 and 05-3817

v.

TAWOOS BAZARGANI; PAUL BAGHERPOUR

Tawoos Bazargani, Appellant in Nos. 06-2396 and 05-4051
Paul Bagherpour, Appellant in No. 05-3817

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 02-cv-08845)
District Judge:  Hon. John P. Fullam

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 15, 2007

BEFORE:  McKEE, STAPLETON and NYGAARD
Circuit Judges

(Filed: June 22, 2007)

STAPLETON, Circuit Judge:

Appellees Kenneth and Jacqueline Snyder brought this action alleging that appellants Tawoos Bazargani and Paul Bagherpour, in violation of the federal Civil Rights Act, the federal Fair Housing Act ("FHA") and Pennsylvania's Human Relations Act ("PHRA"), inquired regarding the Snyders' religious affiliation and thereaafter refused to rent them a condominium because they were Jewish. Bazargani was the owner of the condominium; she had asked Bagherpour, a friend, to assist her in finding a tenant.

## I.

Prior to trial, the District Court entered a partial summary judgment against Bagherpour on the issue of his liability under the PHRA. Its ruling was as follows:

> The Pennsylvania Human Relations Act provides: "It shall be an unlawful discriminatory practice . . . for any person to . . . make any inquiry or elicit any information . . . concerning religious creed or ancestry – in connection with the lease of any housing accommodation." 43 P.S. § 955(h)(6). It is conceded that, on December 8, 2000, in the course of a telephone conversation with plaintiff Kenneth Snyder, Mr. Bagherpour did in fact ask what the Snyders' religious affiliation was. Since that inquiry violated the statute, plaintiffs are entitled to partial summary judgment on liability, to that extent, against the defendant Bagherpour."

App. at 3.

After a two-day trial, the jury answered the following interrogatories in the following manner:

THE COURT: To your first question:
Did Dr. Bazargani decline to rent the condominium to plaintiffs because of their religious affiliation?
You say: Yes.

No. 2:

In asking – Mr. Bagherpour did ask about plaintiffs' religion. In asking that question, was Mr. Bagherpour seeking information which would affect plaintiff's suitability as tenants?

You say: Yes.

3:

By asking about plaintiffs' religion, Mr. Bagherpour violated the Pennsylvania Humans Relations Act: Is Dr. Bazargani also liable for that violation, that is, was Mr. Bagherpour her agent acting within the scope of his agency?

You say: Yes.

And No. 4:

State the amount of compensatory damages sustained by plaintiffs as a result of the violation or violations you have found.

You say: $40,000.00

And No. 5:

State the amount of punitive damages, if any, to be paid by each defendant.

You say: Dr. Bazargani, $20,000.00 and Mr. Bagherpour, $30,000.00

Do you all agree on those answers?

3

THE JURY: Yes.

App. at 748-49.

The District Court denied motions of both defendants for a new trial. While finding the jury's verdict "extremely generous," the Court was "not persuaded that there [was] justification for setting the verdict aside." App. at 10. In response to the defendants' argument that it had erred in submitting the punitive damage issue to the jury, the Court ruled that punitive damages were appropriate under the FHA:

> Since the jury, in answers to interrogatories, expressly found that the defendant Agent had violated the terms of the statute by making the prohibited inquiry about religion, and that plaintiffs' religion was a substantial factor in the ultimate decision not to lease the property to them, it was entirely proper to submit the issue of punitive damages to the jury. *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000) [(holding that punitive damages are available for intentional violations of the FHA)].

App. at 3. Both defendants appealed.

While these two appeals were pending (*i.e.*, Nos. 05-3817 and 05-4051), Bazargani filed a third appeal from a supersedeas order (No. 06-2396). This Court advised the Snyders that, if they obtained an order from the District Court waiving the bond requirement pending a determination by this Court on the merits of the underlying appeals at 05-4051 and 05-3817, Bazargani's appeal at 06-2396 would be moot. The Snyders obtained such an order from the District Court temporarily waiving any bond requirement pending this Court's ruling on the merits of Bazargani's appeal at 05-4051 and Bagherpour's appeal at 05-3817. Accordingly, Bazargani's appeal at 06-2396 will be

4

dismissed as moot.

## II.

Appellant Bagherpour insists in his appeal that: (1) the District Court erred in granting partial summary judgment on the issue of his liability under the PHRA; (2) there is insufficient evidence to support the jury's finding of discriminatory intent; (3) there is insufficient evidence to support the jury's finding that the Snyders sustained actual injury; (4) the District Court erred in not instructing the jury that it could award punitive damages for "intentional" discrimination on the basis of religion only if that discrimination was "wanton and reckless" (App. at 746); and (5) plaintiffs' counsel, in his closing remarks, improperly asked the jury to act as "Attorney Generals" and "send a message" that discrimination must be punished. We find each of these arguments unpersuasive.

We do not understand Bagherpour to dispute that he asked the Snyders about their religious affiliation in connection with the leasing of a housing accommodation. Nor does he cite us to any authority for the proposition that 43 P.S. § 955(h)(6) does not make this an unlawful discriminatory practice without regard to the purpose of the inquiry. We agree with the District Court that the Supreme Court of Pennsylvania would apply § 955(h)(6) in accordance with its plain meaning and that partial summary judgment was appropriate.

While Bagherpour did not admit that in asking about the Snyders' religious affiliation he was "seeking information which would affect plaintiffs' suitability as

5

tenants," there was ample circumstantial evidence to support the jury finding to that effect. Similarly, the record contains ample direct and circumstantial evidence to support the jury's finding that the Snyders sustained actual injury in the form of mental and emotional distress. While we agree with the District Court that the jury's award of compensatory damages of $40,000 to the two plaintiffs was generous, we also agree that it is not so excessive that it can properly be set aside.

The District Court instructed the jury that it could award punitive damages if it concluded that Bagherpour intentionally asked about the Snyders' religious affiliation in order to secure information that would affect their suitability as tenants and that Bazargani intentionally declined to rent the condominium to the Snyders because of their religious affiliation. The District Court declined the request of Bagherpour's counsel to instruct the jury that the defendants' conduct would have to be "not only intentional" but "wanton and reckless." App. at 746. While it is true that "wanton and reckless" misconduct can sometimes serve as a *surrogate* for intentional misconduct, giving rise to punitive damage liability, both are not required. Indeed, wanton disregard and recklessness are generally regarded as inconsistent with intentional misconduct. The District Court did not abuse its discretion in declining to give it.[1]

---

[1] We are mindful of the fact that punitive damages are not available under the PHRA. *See Hoy v. Angelone*, 720 A.2d 745 (Pa. 1998). The plaintiffs proceeded here on the basis of both the PHRA and the federal FHA, however, and the District Court's instructions on punitive damage were consistent with the law concerning the availability of punitive damages under the FHA. *See Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir.

6

We do not agree with Bagherpour that the closing argument of plaintiffs' counsel asked the jury to reach "a decision based upon issues outside the evidence and testimony of [this] case." Bagherpour Br. at 13. Nor do we regard his remarks referencing "Attorney Generals" and "sending a message" to be inappropriate in an FHA case seeking punitive damages. *Alexander v. Riga*, 208 F.3d 419, 425-26 (3d Cir. 2000) (noting Congress's reliance on "private attorneys general" to vindicate a policy "of the highest priority" embodied in the FHA); *Settlegoode v. Portland Pub. Schools*, 371 F.3d 503, 519 (9th Cir. 2004) ("Reminding the jury that they have the capacity to deter defendants and others similarly situated is certainly legitimate where punitive damages are at stake."); *The Emery-Warehouse Co. v. Rhode Island Hospital Trust National Bank*, 757 F.2d 399, 410 (1st Cir. 1985) ("send a message" closing statement appropriate because "counsel is permitted to argue the need for an award of punitive damages as a deterrent against similar conduct by this defendant or by others").

### III.

Bazargani, proceeding *pro se*, contends that the judgment of the District Court against her must be reversed because (1) one of the Snyders' witnesses, Larry Ceisler,

---

2000) ("[B]ecause of the jury's finding of intentional discrimination [in violation of the FHA], the plaintiff need not also demonstrate that the conduct was particularly egregious or malicious in order to obtain punitive damages."). We note that Bagherpour does not take issue with the District Court's conclusion that the intentional discrimination found by the jury was a violation of the Fair Housing Act, and the jury's verdict regarding punitive damages can thus stand based on that Act even though not authorized by the PHRA.

7

committed perjury during his cross examination; (2) she and the Snyders had reached a settlement agreement prior to trial; and (3) Bagherpour ceased to be her agent "as soon as [she] learned about the Snyders' dog" because she had made it clear to Bagherpour that she would not permit an animal in her property. Bazargani Br. at p. 16. We are not persuaded.

Ceisler testified on cross examination that he had graduated from law school, passed the bar, secured a bar number, and practiced for approximately four years. Bazargani insists that Ceisler earlier testified in an arbitration proceeding that he had not secured a bar number. She did not, however, choose to cross examine him at trial about this alleged prior inconsistent statement. Moreover, Ceisler's status with the bar had nothing to do with his testimony and was not material to any issue presented by the facts of this case. In all events, a prior inconsistent statement of a witness clearly provides no basis for overturning a jury's verdict.

As early as the Fall of 2004, the Snyders offered to settle their claims against Bazargani with an exchange of mutual releases. The parties thereafter exchanged forms of release, but they could not agree upon one that Bazargani was willing to sign. The last form she submitted to the Snyders contained language the District Court described as "virtually incomprehensible." App. at 2. As trial approached, the Snyders offered Bazargani a final opportunity to settle for an exchange of mutual general releases, setting a deadline of April 29, 2005. On May 4, 2005, the Snyders notified Bazargani that, not

8

having received an executed release, they would pursue their claims at trial. On June 10, 2005, five days before trial, Bazargani executed and submitted the form of general release that had been given to her in the Fall of 2004. She then proceeded to trial without raising settlement as a defense. Clearly, the Snyders' offer of settlement had been withdrawn before Bazargani executed a release and, in any event, Bazargani is not in a position after the jury's verdict to make a contrary claim.

With respect to Bagherpour's agency, the jury determined that he was Bazargani's "agent acting within the scope of his agency." App. at 748. There is ample evidence to support this finding, and it cannot be disturbed. Moreover, the judgment does not rest solely on this finding. The jury also concluded that Dr. Bazargani personally "decline[d] to rent the condominium to plaintiffs because of their religious affiliation," *id*., which is an independent violation of the FHA, 42 U.S.C. § 3604(a), and the PHRA, 43 P.S. 955(h)(1).

IV.

The judgment of the District Court in No. 05-3817 and 05-4051 will be affirmed. The appeal in No. 06-2396 will be dismissed as moot.