975 A.2d 531 (2009)
408 N.J. Super. 495
Freddi JACKOWITZ, Plaintiff-Appellant,
v.
Stephanie LANG, Defendant-Respondent.
No. A-4699-07T1.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 2009.
Decided July 31, 2009.
*532 Douglas M. Standriff, Passaic, argued the cause for appellant.
William H. Mergner, Jr., Cedar Knolls, argued the cause for respondent (Leary, Bride, Tinker & Moran, attorneys; Peter M. Bouton, on the brief).
Before Judges CARCHMAN, R.B. COLEMAN and SABATINO.[1]
*533 The opinion of the court was delivered by
CARCHMAN, P.J.A.D.
This appeal requires us to consider the propriety of an advocate's argument that the jury should "send a message" by its award. Our courts have addressed this issue in criminal and punitive damage cases. Here we consider the issue in a civil trial where the sole issue in dispute is whether plaintiff met the verbal threshold and if so, the quantum of compensatory damages. At trial, the use of the argument combined with other inappropriate comments caused the trial judge to set aside a damage award verdict in favor of plaintiff and order a new trial. The new trial, devoid of the offending comments, resulted in a "no cause" verdict. We conclude that the use of "send a message" when the sole issue is compensatory damages is inappropriate. Counsel's assertions in this case, both on opening and summation, were replete with improper commentary and as such support our affirming the trial judge's discretionary decision to grant a new trial.
This is a verbal threshold case involving a three-car collision wherein plaintiff Freddi Jackowitz's vehicle was struck by a vehicle driven by defendant Stephanie Lang.[2] Also involved was a vehicle driven by another defendant Katherine DeBaker[3]. Defendant apparently "ran a red light" causing the accident. At the time of the accident, plaintiff was stopped at the light.
As a result of the collision, both plaintiff and DeBaker suffered injuries. Just prior to jury selection, defendant stipulated as to liability. Consequently, plaintiff's complaint against DeBaker was dismissed, and both plaintiff's and DeBaker's claims were tried on the issue of damages only.
During the four days of trial, the sole witnesses, with the exception of a character witness called on behalf of plaintiff, were plaintiff, DeBaker and five medical experts. As liability had been stipulated, aside from plaintiff's and DeBaker's description of the accident, no other testimony was produced regarding defendant's negligence or the circumstances of the accident.
The testimony of the witnesses was secondary, however, to comments made by counsel during the course of opening and summation. During plaintiff's opening, counsel said:
The main reason you're here is because Ms. Clericuzio's client Stephanie Lang caused a car accident. And as a result of that car accident Ms. Jackowitz has permanent injuries that she's going to have for the rest of her life. That's it in a nutshell. This is a tort case. Ms. Jackowitz has asked the Court to basically send a message to the defendant and to other drivers through your decision that the type of behavior from Mrs. Lang and her abuse of the privilege of driving an automobile cannot be commenced [sic], (phonetic) that when people suffer injuries there must be a consequence. All right?

[(Emphasis added).]
Counsel continued:
And let me ask you this question; is there a larger reason that you're here that we've taken six hours to get to this point? Are you here simply for Ms. Jackowitz and Ms. DeBaker? Or is *534 there a larger reason that you're here? Certainly, as I said, you're here for Ms. Jackowitz. You're here to decide how to make her whole, how to even out those scales. But there's a larger reason you're here and that's to send a message that when somebody abuses the privilege of driving, when somebody cannot wait another 40 seconds for a light to change that there has to be consequences. And in this case Ms. Lang's refusal or inability to wait another 40 seconds for a light to change has had consequences.

Ms. Jackowitz and I have been basically waiting for four years for you to send a message to Ms. Lang and to the other people that use the roads in New Jersey that there need to be consequences when people do the types of things like running lights at that intersection that causes people impairment, loss of enjoyment of life. Thank you.
[(Emphasis added).]
During a colloquy before trial, even though defense counsel did not specifically object, the trial judge raised the issue of the "send a message" comments. He neither provided a cautionary instruction to the jury nor did he declare a mistrial, and the trial proceeded.
At the conclusion of the proofs and before summation, the judge belatedly instructed the jury with regards to counsel's opening statement. The judge reminded the jury that opening and closing statements are not evidence and attorneys are not witnesses. Specifically in reference to counsel's "send a message" theme, the judge stated that the purpose of the trial was "to determine whether or not the plaintiffs [were] entitled to compensation for damages that were proximately caused by the accident," and accordingly, the jury "should disregard that comment and that comment should not be a subject of [the jury's] in [their] deliberations."
Defense counsel began her summation by repeating that "this [was] a typical accident, a typical case. There's an accident and, unfortunately many of us have had them. They happen." The remainder of the summation focused on questioning the credibility and motive of plaintiffs and their expert witnesses, including tracking Jackowitz's timeframe in seeking treatment and her choice of medical professionals.
Plaintiff's counsel started his summation by suggesting that in cases such as this, sometimes the focus shifts from defendant's conduct to what plaintiff "did do, didn't do, whether [sic] doctor did do, didn't do or something like that," and whether plaintiff should "have gone to the doctor sooner" or whether the doctor "[did] something wrong." Counsel then added the following comments:
I want to put it to you this way, neither Freddi Jackowitz nor Kathy DeBaker caused this accident. Neither Freddi nor Kathy cause this accident. Neither Freddi nor Kathy caused this accident. Stephanie Lang did. And that's what this trial is about. What Stephanie Lang did and the harm she caused by abusing her driving privileges on the day of the accident. That's what the trial is about. And if when you go back and deliberate, and you're going to start talking about the things that were talked about at the trial, what the doctors discussed and that type of thing, so you're going to end up discussing all those other details, at some point in time I would just ask you to say to yourself or even out loud, let's not forget what or why you're really here which is to concentrate on what Stephanie Lang did wrong by her attorney's own admission.

[(Emphasis added).]
He further stated:
And the idea is in a tort case somebody has to have a duty in order to be *535 negligent and to do something wrong they have to have a duty to do something right to begin with. And the duty is to drive properly. When the State of New Jersey gives you your license they test you first to make sure you know how to drive and you know what street signs mean. And you know, when you accept that license and have your picture taken you're saying, yes, I'm going to obey the traffic laws, you know, I'm not going to run through red lights, et cetera. I am going to be a careful, prudent driver and not injure other people.

Breach, somebodysomebody doesn't do what they promised they will do.
[(Emphasis added).]
The judge interjected at that point and instructed the jury as follows:
Ladies and gentlemen, this is a trial on damages only. [Plaintiff's counsel] is going into the area of really negligen[ce] and while the defendant has admitted-has acknowledged that she was negligent this trial is only about damages, whether there were damages that were caused as a result of the motor vehicle accident, what those damages are and whether those damages were proximately caused by the happening of the accident. So it's not appropriate for us to go into the duty and to the breach issues, that is really for a negligence trial. Again, that's not before you today.
Counsel then focused his summation on plaintiff's injuries and relevant legal concepts and stated that plaintiff was simply asking "for fair compensation." There were no objections by defense counsel.
After the judge's jury charge, the jury deliberated and rendered a verdict of $50,000 in favor of plaintiff and $75,000 in favor of DeBaker. Defendant then filed a motion for new trial. In support of her motion, defendant argued that "[c]ounsel for plaintiff Jackowitz made a highly improper appeal to the jury, in opening statements, asking them to `send a message' to defendant Lang who `ran a red light.'"
The judge granted the motion for a new trial as to plaintiff, and denied the motion as to DeBaker. In granting the motion, the trial judge recognized that "the law for [sic] permits some mention of how the accident happened, some context for the jury to understand the happening of the accident and how the injuries were incurred." He found, however, that counsel for plaintiff, in his opening and in his closing, "went far beyond the permissible standards for talking about the case." The trial court found that plaintiff "through her attorney ..., exceeded the propriety ofand the bounds of proper argument in" both the opening statements and closing arguments because he appealed to punitive aspects and that is how plaintiff "got over the verbal threshold," rather than by proper evidence. He found that despite the judge's curative instructions, the jury "was so inflamed and so incensed by the comments by [plaintiff's counsel] that it did affect thethe verdict in the Jackowitz case."
The judge acknowledged that he "probably should have declared a mistrial at that point or given further cautionary instructions." He found that such an opening statement was improper and "an appeal to what's referred to as the Golden Rule." See Geler v. Akawie, 358 N.J.Super. 437, 464, 818 A.2d 402 (App.Div.) (stating that "[t]he Old Testament's `golden rule' that you should do unto others as you would wish them to do unto you may not be applied in this context"), certif. denied, 177 N.J. 223, 827 A.2d 290 (2003); Henker v. Preybylowski, 216 N.J.Super. 513, 520, 524 A.2d 455 (App.Div.1987) (stating "[t]he `golden rule' argument, i.e., asking jurors to award damages in the amount that they *536 would want for their own pain and suffering, is still prohibited"). Specifically, the judge found that "[plaintiff's counsel was] really asking the jury to consider ... what the impact would be on themselves and to, you know, how they should somehow punish the defendant ... for her actions," and that it was "an improper argument that appealed to the golden rule and to punitive sentiments directed at defendant."
Plaintiff's case was retried and resulted in a verdict of no cause for action in favor of defendant. This appeal followed.
"[A] civil plaintiff has a constitutional right to have a jury decide the merits and worth of her case." Johnson v. Scaccetti, 192 N.J. 256, 279, 927 A.2d 1269 (2007). "Determining just compensation for an accident victim, particularly when the damages are not susceptible to scientific precision, as in the case of pain and suffering damages, necessarily requires a high degree of discretion." Ibid. Accordingly, our jury system "places trust in ordinary men and women of varying experiences and backgrounds, who serve as jurors" and gives them "wide latitude in which to operate." Id. at 279-80, 927 A.2d 1269.
"Because a jury is given wide latitude in determining pain and suffering damages, the standard for granting a new trial or remittitur is necessarily high. The `judge may not substitute his judgment for that of the jury merely because he would have reached the opposite conclusion....'" Id. at 281, 927 A.2d 1269 (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598, 379 A.2d 225 (1977) (quoting Dolson v. Anastasia, 55 N.J. 2, 6, 258 A.2d 706 (1969))). Consequently, "[a] trial court should not order a new trial ... unless it is so clearly disproportionate to the injury and its sequela ... that it may be said to shock the judicial conscience. The verdict must be `wide of the mark' and pervaded by a sense of `wrongness.'" Id. at 281, 927 A.2d 1269 (quoting Baxter, supra, 74 N.J. at 598-99, 379 A.2d 225 (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)) (internal citation omitted)). "In other words, the trial court -must be `clearly and convincingly' persuaded that it would be manifestly unjust to sustain the award." Ibid. (citing R. 4:49-1(a); Baxter, supra, 74 N.J. at 604, 379 A.2d 225).
When such finding is made and supported by the record, we will defer to the trial judge's discretion in granting a new trial and will intervene only if we are satisfied "`that there was a miscarriage of justice under the law.'" See Geler v. Akawie, 358 N.J.Super. 437, 464, 818 A.2d 402 (App.Div.) (stating that "[t]he Old Testament's `golden rule' that you should do unto others as you would wish them to do unto you may not be applied in this context"), certif. denied, 177 N.J. 223, 827 A.2d 290 (2003); Henker v. Preybylowski, 216 N.J.Super. 513, 520, 524 A.2d 455 (App.Div.1987) (stating "[t]he `golden rule' argument, i.e., asking jurors to award damages in the amount that they would want for their own pain and suffering, is still prohibited"). An appellate court must pay deference to the trial court's "`feel of the case,'" given that, on appeal, review is confined to "the cold record." [Baxter, supra, 74 N.J.] at 600, 379 A.2d 225. However, "[t]he `feel of the case' factor, while entitled to deference, is the only element distinguishing the standard governing appellate review from that controlling trial court reaction to a jury verdict." Ibid.

[Scaccetti, supra, 192 N.J. at 282, 927 A.2d 1269.]
Ultimately, we must determine whether the judge abused his discretion in granting the motion for a new trial.
*537 In addressing the issue here, we consider the limits of advocacy as the trial and jury system achieves resolution of disputes. Counsel's arguments are expected to be passionate, "for indeed it is the duty of a trial attorney to advocate." Geler, supra, 358 N.J.Super. at 463, 818 A.2d 402. At the same time, however, arguments should be fair and courteous, grounded in the evidence and free from any "potential to cause injustice," ibid., such as "[u]nfair and prejudicial appeals to emotion," id. at 468, 818 A.2d 402, and "insinuations of bad faith on the part of defendants who sought to resolve by trial validly contested claims against them." Id. at 469, 818 A.2d 402 (citing Henker, supra, 216 N.J.Super. at 518, 524 A.2d 455); Accord Rodd v. Raritan Radiologic Assocs., P.A., 373 N.J.Super. 154, 171-72, 860 A.2d 1003 (App.Div.2004).
Fleeting comments, even if improper, may not warrant a new trial, particularly when the verdict is fair. See, e.g., Dolan v. Sea Transfer Corp., 398 N.J.Super. 313, 332, 942 A.2d 29 (App.Div.), certif. denied, 195 N.J. 520, 950 A.2d 907 (2008). Moreover, the "[f]ailure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made," and it "also deprives the court of the opportunity to take curative action." State v. Timmendequas, 161 N.J. 515, 576, 737 A.2d 55 (1999). Where defense counsel has not objected, we generally will not reverse unless plain error is shown. R. 2:10-2.
Against these parameters, we consider the specific comments at issue. The cases in New Jersey addressing the propriety of the "sending a message" argument have focused on criminal verdicts or punitive damage awards. See, e.g., State v. Rose, 112 N.J. 454, 521, 548 A.2d 1058 (1988) (concluding that that type of argument is "improper and prejudiced defendant's penalty-phase proceeding," where the prosecutor "urg[ed] the jury to sentence defendant to death in order to deter him from future acts of violence and to `send a message' to society that conduct such as defendant's will result in the death penalty"); State v. Hawk, 327 N.J.Super. 276, 283, 743 A.2d 325 (App.Div.2000) (noting that "[p]rosecutors may sum up graphically and forcefully, but they may not make comments that a jury must `send a message' to the community and to the defendant") (internal citations omitted). Both Rose and Hawk required reversals based on the prosecutor's comments combined with other misconduct.
Most recently, in Tarr v. Bob Ciasulli's Mack Auto Mall, Inc., 390 N.J.Super. 557, 569 n. 3, 916 A.2d 484 (App.Div.2007), aff'd, 194 N.J. 212, 943 A.2d 866 (2008), we alluded to Rose, supra, 112 N.J. at 520-21, 548 A.2d 1058 and recognized that "[u]sually exhorting the jury to send a message is an improper argument." However, in Tarr, supra, we declined to decide "whether such an argument would be proper when setting the amount of a punitive damage award." Ibid. However, we held that the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17, "does not permit counsel to urge the jury to increase a punitive damage award in order to enhance the general deterrence of others." Id. at 569, 916 A.2d 484. In Tarr, "plaintiff argued to the jury that the amount of the punitive damage award present[ed] an `opportunity to send a message to deter [that] particular defendant and others, whether they be other non-automotive businesses or automotive businesses from this type of conduct.'" Ibid. In addition, the trial court similarly instructed the jury "that its award was `to punish the defendant and to deter the defendant and others from similar future wrongful conduct.'" Id. at 565, 916 A.2d 484. We concluded *538 that counsel's "argument constituted plain error under the Act, and to the extent the argument was condoned by the jury instructions the charge was also contrary to the Act." Id. at 569, 916 A.2d 484. See also Jadlowski v. Owens-Corning Fiberglas Corp., 283 N.J.Super. 199, 211-13, 661 A.2d 814 (App.Div.1995) (requiring a new trial where plaintiff's summation during the punitive damages phase of the case, aimed at punishing the defendant for its conduct, resulted in an award, which demonstrated prejudice, partiality or passion, by the jury, certif. denied, 143 N.J. 326, 670 A.2d 1066 (1996)). But see Snyder v. Bazargani, 241 Fed.Appx. 20, 23 (3d Cir.) (concluding that plaintiff's counsel's remarks referencing "sending a message" were not inappropriate in a [Fair Housing Act] case seeking punitive damages), cert. denied, ___ U.S. ___, 128 S.Ct. 661, 169 L.Ed.2d 511 (2007); Greenleaf v. Garlock, Inc., 174 F.3d 352, 364 (3d Cir.1999) (finding that the lower court judge did not abuse his discretion by denying defendant's motion for a new trial where plaintiff, among other things, suggested to the jury that a verdict for plaintiffs would "`send a message to the folks at [defendant company]'"). Other courts have found the "send a message" comment to be inappropriate but because of a prompt curative instruction, found no error. See, e.g., Dixon v. Int'l Harvester Co., 754 F.2d 573, 585-86 (5th Cir.1985); Kukla v. Syfus Leasing Corp., 928 F.Supp. 1328, 1338 n. 5 (S.D.N.Y.1996); Griffith v. Mt. Carmel Med. Ctr., 842 F.Supp. 1359, 1362-63 (D.Kan.1994).
One jurisdiction has recognized the impropriety of the "send a message" argument but has left the impact of the statements to the discretion of trial judge. In Pierce v. Platte-Clay Elec. Coop., Inc., 769 S.W.2d 769, 778-79 (Mo.1989), the Missouri Supreme Court said:
Toward the end of his closing, Pierce's counsel remarked "when you're done you can send a message to the utility world." This statement properly drew an immediate objection. The trial court sustained the objection and instructed the jury to disregard the remark; however, the court refused to sustain appellant's motion for a mistrial.
The decision to grant a mistrial lies in the sound discretion of the trial court. Absent a manifest abuse of discretion, an appellate court will not interfere with the trial court's decision. Hoene v. Associated Dry Goods Corporation, 487 S.W.2d 479, 486 (Mo.1972); Smith v. Courter, 531 S.W.2d 743, 746 (Mo.1976). However, Missouri courts have long shown displeasure with "send a message" arguments in cases where punitive damage[s] are not sought. Accord, Smith, [supra,] 531 S.W.2d at 747; Fisher v. McIlroy, 739 S.W.2d 577, 581 (Mo. App.1987). When the message argument becomes the theme of the entire closing, it constitutes reversible error. See Smith, [supra,] 531 S.W.2d at 748; Fisher, [supra,] 739 S.W.2d at 582.
Wisdom gathered from long experience tells us that trial courts are better positioned to assess the amount of prejudice injected by admittedly improper arguments. Graves v. May Department Stores Co., 153 S.W.2d 778, 785 (Mo.App. 1941). Given the cold record on appeal, appellate courts of this state uniformly uphold trial courts' determinations of the prejudice injected by "send a message" arguments. See, e.g., Smith, [supra,] 531 S.W.2d at 747 (trial court affirmed in granting new trial); Graves, [supra,] 153 S.W.2d at 785 (trial court upheld in refusing mistrial); Dickerson v. St. Louis Southwestern Ry. Co., 674 S.W.2d 165, 173 (Mo.App.1984) (trial court upheld in refusing mistrial); Fisher, [supra,] 739 S.W.2d at 582 (trial court's order granting new trial affirmed).

*539 Here, Pierce's counsel danced dangerously close to reversible error. However, the quick objection by appellant's able counsel and the trial court's firm instruction to the jury prevented prejudice. The trial court's refusal to grant a mistrial was not an abuse of discretion. Hoene, [supra,] 487 S.W.2d at 484.
The caselaw informs us that the use of a "send a message" argument is clearly inappropriate in criminal cases, may be inappropriate in punitive damage cases and is clearly inappropriate in civil compensatory damage cases. The fault line is the remedy afforded the offended party when the inappropriate argument is made. Again, to summarize, the authorities suggest that a prompt objection or a prompt curative instruction ordinarily precludes a mistrial. Here, at the close of the evidence, the judge did give a curative instruction regarding "sending a message." The proscriptive conduct did not end; it took on another form.
While counsel thereafter did not overtly implore the jury to "send a message," thematic overtones of his summation advanced the same message. We acknowledge that even when liability is stipulated, there can be appropriate references to the happening of the accident as such information may be relevant to the nature of the injuries sustained and damages. Yet a careful review of the summation reveals that the focus was not on the happening of the accident but on punishing defendant for the accident. References to "running a red light," concentrating on "what [defendant] did wrong" and allusions to defendant "abusing the privilege" of a driver's license were not relevant to the mechanics of the accident. They were calculated arguments designed to exact punishment against defendant and crossed the line of appropriate advocacy.
The trial judge, recognizing the issues created by the opening and summation, determined that the appropriate action was to grant a new trial. In so doing, he did not deprive plaintiff of her day in court. He provided the opportunity for a sanitized trial free of the arguments that he found had impacted on the jury's original verdict. While we have not been provided with transcripts of the new trial, defendant has represented that neither the opening nor summation contained the offending comments. The jury rendered a verdict of no cause for action against plaintiff. While we recognize that trials are dynamic processes and no trial truly replicates another, we are satisfied that plaintiff has had an opportunity to fairly and justly present her cause to a trier of fact.
In sum, we conclude that the use of the "sending a message" argument is inappropriate in a civil case where the only issue is compensatory damages. We further conclude that under the circumstances presented here, the judge did not abuse his discretion in ordering a new trial.
Affirmed.
NOTES
[1] Judge Sabatino did not participate in oral argument, but has, with the consent of counsel, joined in this opinion. R. 2:13-2(b).
[2] All references to defendant refer to Lang.
[3] Although named as a defendant in this action, DeBaker filed her own personal injury action, which was consolidated for trial with plaintiff's action.