**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1117-15T4

AMY M. CAMPANELLI,

    Plaintiff-Respondent,

v.

KUSUM S. PATEL,

    Defendant-Appellant,

and

SATISH PATEL,

    Defendant.

_____

Submitted January 31, 2017 — Decided October 23, 2017

Before Judges Messano and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No.
L-3671-12.

Camassa Law Firm, attorneys for appellant
(John A. Camassa, of counsel; Christopher M.
Brady, on the briefs).

Law Office of S.P. DiFazio, attorneys for
respondent (Salvatore P. DiFazio, on the
brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendant Kusum Patel appeals the $336,000 judgment entered against her in favor of plaintiff Amy Campanelli, following a jury trial, and the order denying defendant's motion for a new trial and directed verdict. We affirm. The comments of plaintiff's counsel made during summation, although improper, were addressed by the court's curative instruction and did not result in a miscarriage of justice requiring a new trial.

The underlying personal injury action arose from a motor vehicle accident in 2010, when defendant's vehicle collided with plaintiff's at an intersection. The case was tried to a jury in 2015. Plaintiff contended that she had sustained permanent injuries to her neck and back as a result of the accident. Dr. Natalio Damien, a radiologist, testified that plaintiff's cervical and lumbar MRIs showed bulging discs in her neck at C5/6 and in her lower back at L4/5, both pressing on the thecal sac. Dr. Patrick M. Collalto, an orthopedic doctor, testified for plaintiff that the bulging discs constituted a permanent injury and that they were caused by the accident. Plaintiff's electromyogram (EMG) showed cervical radiculopathy at the C5/6 level. Plaintiff's counsel failed to elicit that Dr. Collalto's opinions were given

A-1117-15T4

within a reasonable degree of medical probability, although the doctor did use that standard when testifying during his earlier deposition.

At the close of plaintiff's case, defendant moved for a directed verdict based on Dr. Collalto's failure to testify about the standard of reasonable medical probability.  The trial judge denied the motion.  In light of that ruling, defendant's counsel agreed the doctor could submit a supplemental certification addressing the standard.

The defendant called Dr. Robert J. Bercik, a board certified orthopedic surgeon, as her defense expert.  He testified that plaintiff suffered sprains from the accident that were not permanent.  He testified that the MRIs showed disc desiccation, not bulges, attributable to a degenerative process.  On direct examination, defense counsel elicited that twenty percent of Dr. Bercik's time was spent preparing examination reports and virtually all of these were for the defense.

Plaintiff's counsel was twice warned on cross-examination to allow Dr. Bercik to finish the answers to his questions.  A number of questions by plaintiff's counsel were about Dr. Bercik's interpretation of the MRIs and the time he spent preparing reports.

During summation, defendant's counsel forewarned the jury that plaintiff's counsel was going to tell them that "[a]ll [Dr.

Bercik] does is testify for the defense and all he does is find no injuries . . . ." He told the jury, "[y]ou decide the way he testified whether he's up here lying to you in order to keep that work . . . ."

Plaintiff's counsel then made several comments about Dr. Bercik in his summation which form the subject of this appeal. One comment implicated Dr. Bercik's credibility.

> If you spend 20 percent of your work week servicing one client and that client[,] the defense industry in his case, and your client in your case is who [] you rely on for 20 percent of your income, do you think you're going to give reports that support the plaintiff or are you going to bend over backwards to say what you have to say to support the defense?

Plaintiff's counsel told the jury that Dr. Bercik "is not a credible witness although he is smooth as silk." "He just sits there and butter wouldn't melt in his mouth and every question you have for him he has an answer." Counsel said Dr. Bercik was a "pro," a "professional testifier," and a "smoothie." Counsel stated that defendant's expert was "a defense doctor," was "too smart" and "too smooth" during testimony, and played a "shell game" and a "show game." Counsel urged the jury not to "let that practice fool you," and not to "fall into the trap." Counsel referred to Dr. Bercik's client as the "defense industry." Counsel stated that Dr. Bercik's testimony "was there for the sole purpose

of protecting his industry in the defense area and protecting the defendants in order to do that."

The trial judge interrupted plaintiff's counsel, calling both counsel to sidebar, whereupon defense counsel then objected to the remarks. Defense counsel asked for "an immediate curative instruction" suggesting "that those comments were improper and should not be considered by [the jury] at all." The court then, and without objection from either counsel, instructed the jury:

> Members of the jury, we have certain rules in terms of fair comment by the attorneys during the course of their summation and they're certainly entitled to comment on the [evidence] that's presented before you and suggest ways in which you could judge the credibility of witnesses. But the comments of [plaintiff's counsel] have gone far beyond what is acceptable in terms of the comments related to Dr. Bercik and so disregard any comments in -- with respect to that testimony that was perhaps somehow contrived by Dr. Bercik to protect the defense industry, those comments were inappropriate and I'm going to ask you to disregard them.

After deliberations, the jury returned a verdict in favor of plaintiff on liability and damages.

A few weeks after trial, defendant moved for a new trial or a verdict directed in her favor. On October 9, 2015, the court denied defendant's motions. Although the court found that counsel's statements "clearly went above and beyond . . . the bounds of acceptable advocacy," it was not "persuaded that [the

jury's verdict] is against the weight of the credible evidence, such that the only explanation of the jury's verdict could lie with the comments of counsel during summation." In rejecting the motion for a directed verdict, the trial court found that "the rules certainly don't prohibit the [c]ourt's exercise of its judicial discretion to conduct the proceedings in the interest of justice," particularly where the standard of "a reasonable degree of medical probability" had been applied by the expert during his deposition.

On appeal, defendant contends because of plaintiff's counsel's aggressive cross-examination of Dr. Bercik and inappropriate comments made in summation, that the court erred in denying her motion for a new trial. Also, she contends the court erred in denying her motion for a directed verdict because plaintiff's expert did not state his opinions with a reasonable degree of medical probability.[1] We do not find merit in these issues.

We review the denial of defendant's motion for a new trial under the same standard used by the trial court, which is, "whether there was a miscarriage of justice under the law." Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011) (citing

---

[1] Defendant conceded liability on appeal.

Bender v. Adelson, 187 N.J. 411, 435 (2006)). We do so giving "'due deference' to the trial court's 'feel of the case.'" Ibid. (quoting Jastram v. Kruse, 197 N.J. 216, 230 (2008). "A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Id. at 521 (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977)). We must, however, make our own independent determination of whether a miscarriage of justice occurred. Carrino v. Novotny, 78 N.J. 355, 360 (1979).

Cross-examination has been termed "the greatest legal engine ever invented for the discovery of truth." See State v. Benitez, 360 N.J. Super. 101, 125 (App. Div. 2003) (Parker, J., dissenting); Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 2 on N.J.R.E. 611 (2017). Plaintiff's counsel extensively cross-examined the doctor using the MRI films in an attempt to discredit his opinion that plaintiff did not have bulging discs. There were two instances where, without objection from defense counsel, the judge instructed counsel to allow the witness to finish answering the question. In the context of the entire trial, where

credibility was in issue, we are satisfied that the cross-examination did not cause defendant to be denied a fair trial.

Counsel is generally "allowed broad latitude in summation [and] counsel may draw conclusions even if the inferences that the jury is asked to make are improbable, perhaps illogical, erroneous or even absurd." Bender, supra, 187 N.J. at 431 (2006) (alteration in original) (quoting Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999), certif. denied, 163 N.J. 395 (2000)). However, counsel "may not use disparaging language tending to discredit the opposing party, or witness, or accuse a party's attorney of wanting the jury to evaluate the evidence unfairly, of trying to deceive the jury, or of deliberately distorting the evidence." Rodd v. Raritan Radiologic Assocs., 373 N.J. Super. 154, 171 (App. Div. 2004) (citations omitted). The "cumulative effect" of such comments can result in a miscarriage of justice. Geler v. Akawie, 358 N.J. Super. 437, 468 (App. Div.), certif. denied, 177 N.J. 223 (2003). However,"[f]leeting comments, even if improper, may not warrant a new trial, particularly when the verdict is fair." Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009).

Here, the comments in summation were not numerous but implied that Dr. Bersick's opinions were intended to favor the defense, were disparaging and implied that he misled the jury. Counsel

stated that Dr. Bercik's testimony was to protect the "defense industry" and "his industry in the defense area." Those comments could imply that insurance coverage was available contrary to N.J.R.E. 411 (stating "[e]vidence that a person was or was not insured against liability is not admissible on the issue of that person's negligence or other wrongful conduct.").

"[I]n some cases prompt curative instructions by the trial judge have been found sufficient to ameliorate the effect of isolated lapses on the part of an attorney in closing argument." Geler, supra, 358 N.J. Super. at 470. "[W]hen weighing the effectiveness of curative instructions, a reviewing court should give equal deference to the determination of the trial court. The adequacy of a curative instruction necessarily focuses on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly reached." State v. Winter, 96 N.J. 640, 647 (1984). The test is whether the error was "clearly capable of producing an unjust result." State v. Daniels, 182 N.J. 80, 95 (2004) (quoting R. 2:10-2).

The curative instruction here was clear and to the point; the jury was to disregard the comments. The judge expressly told the jury the comments were improper. There was no objection from defense counsel about its content. We are satisfied the trial

court did not err in determining that the curative instruction was sufficient to address counsel's improper comments.

This case is not like Szczecina, where an attorney made inappropriate comments in the opening and closing that warranted a new trial. There counsel repeatedly referred to a defense witness as a "spin doctor" and others as "paid agreers"; defense counsel was labeled multiple times as a "spokesman"; counsel asked the jury to "send a message," used the term "game plan" repeatedly, and accused defense counsel of intentionally muddying the waters and the medical defense team as a "tag team" and "hired guns." Szczecina v. PV Holding Corp., 414 N.J. Super. 173, 180 (App. Div. 2010). Defense counsel did not object, nor did the trial court intervene. Id. at 184-85. That was not the case here. Nor is it similar to Geler, where the disparaging comments in the closing were numerous, counsel impermissibly invoked the "golden rule," and "misstated material elements of the evidence." Geler, supra, 358 N.J. Super. at 464, 466. Those types of errors are not alleged in the present case.

Here, the comments were limited to the summation, were not numerous or pervasive and the trial court stopped the summation in order to immediately give a curative instruction. The court also gave the standard instruction to the jury on the credibility of witnesses and about experts.

We are satisfied that the comments in summation did not lead to a verdict that could not "otherwise be justly reached." There was expert testimony for both sides; both parties testified. The award of damages was reflective of the testimony about the nature and extent of the permanent injuries. On this record, the comments, addressed by the curative instruction, did not rise to the level of manifest injustice.

Defendant moved for a directed verdict at the close of plaintiff's case and again in her motion for a new trial, arguing "there's no medical testimony of permanent injury," because Dr. Collalto failed to state during his trial testimony that his opinions were rendered within a reasonable degree of medical probability.

Defendant is critical of the court's decision to allow plaintiff to supplement Dr. Collalto's testimony by submitting a certification that the doctor's opinions were given within a reasonable degree of medical probability. However, the decision about whether to allow supplemental testimony was based on the court's soundly exercised discretion. See Bondi v. Pole, 246 N.J. Super. 236, 239 (App. Div. 1991) (where an expert witness was recalled to supply testimony that his opinion was within a reasonable degree of medical probability); Appeal of Dale, 134

N.J. Eq. 502, 504 (E. & A. 1944) (permitting recalling of witness to supplement examination).

In reviewing the denial of defendant's motion for a directed verdict, we apply the same standard as the trial court. Frugis v. Bracigliano, 177 N.J. 250, 269 (2003). We are to accept "as true all the evidence which supports the position of the party defending against the motion and accord [ ] him the benefit of all inferences which can reasonably and legitimately be deduced therefrom . . . ." Verdicchio v. Ricca, 179 N.J. 1, 30 (2004). The review function is "quite a mechanical one" where the court determines whether evidence exists "viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

In this case, plaintiff, who was thirty-four at the time, provided proof through her own testimony and the expert testimony of a radiologist and orthopedist that she was injured in the accident, that the injuries were permanent and testified about the effect of those injuries on her life. The court did not err in denying the motions for directed verdict because there was evidence to support the jury's verdict.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1117-15T4