**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3082-24

RYAN ROBERTS and REBECCA
ROBERTS,

    Plaintiffs-Appellants,

v.

KELLIE KRAUSE,

    Defendant-Respondent.

_____

Submitted May 12, 2026 – Decided June 3, 2026

Before Judges Torregrossa-O'Connor and Rosero.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1104-23.

Freidel & Kramer, attorneys for appellants (Talbot B. Kramer Jr., on the briefs).

Lauletta Birnbaum, LLC, attorneys for respondent (Dante B. Parenti and Michael C. Donio, on the brief).

PER CURIAM

Plaintiffs Ryan Roberts and Rebecca Roberts (the Robertses) appeal from the trial court's April 16, 2025 ruling precluding the replay of an officer's body worn camera (BWC) footage that the jury requested during deliberations in a civil, malicious prosecution trial. Having reviewed the record in light of the applicable legal principles, we affirm.

I.

In 2004, defendant Kellie Krause and her husband Ken purchased a 2.33-acre property in Monroe Township. The land included an "access way" that was used by plaintiffs to access a garage they built on their property after defendant and her husband purchased the land.

The relationship between the parties became contentious and defendant built a fence on her property, along the access way. Thereafter, the parties engaged in litigation regarding the fence and defendant prevailed.

On August 17, 2022, defendant discovered plaintiffs had initiated a public campaign and petition on Change.org addressed to town councilmen and the mayor. This petition was also posted on social media. The online postings included photos of defendant's home and the fence, accusations that defendant has not paid her property taxes and landlocked the plaintiffs' property. As a result, defendant felt she was being "bullied" online. Additionally, due to the

attention plaintiffs' online campaign received, lawn signs began to appear around the town saying "Save [the access way]," which made defendant feel that she and her family were being harassed.

On August 17 and 29, 2022, defendant went to the local police department to complain about the online campaign. These conversations were recorded on the officer's BWC. On November 15, 2022, defendant filed criminal complaints against plaintiffs charging harassment, N.J.S.A. 2C:33-4.1(a)(1). When the parties appeared for trial at the Monroe Township Municipal Court on May 5, 2023, the prosecutor dismissed the case prior to trial.

On October 4, 2023, plaintiffs filed a civil complaint against defendant alleging malicious prosecution. Plaintiffs alleged defendant filed the criminal complaints against them without any basis in law in a willful and malicious manner. On November 3, 2023, defendant filed her answer denying the allegations. The case proceeded to a jury trial on April 14 and 16, 2025.

During the trial, plaintiffs' counsel called defendant to testify. On direct examination, counsel questioned defendant regarding her conversations with the police officers on August 17, 2022. Counsel used portions of the officer's BWC video from that day to refresh defendant's recollection. Counsel stated:

Q: On the 17[], you learn about the post, and you go down to the Williamstown Police Department.

A: Mmm-hmm.

Q: And you meet with a -- you meet with a police officer?

A: I don't believe I went down that day. I don't believe it was for a couple of days. I don't know if it was the -- I -- it might have been a day after.

Q: Well, we'll try and help refresh your -- your recollection.

A: Yeah, because I -- I went twice after that.

Q: While we're getting some video evidence set up, you talked about being blocked off the Change.org?

A: No, I believe it was a Monroe Township page that her and her mother -- or actually, yeah.

Returning to the circumstances surrounding Krause's first visit to the polices station, counsel continued:

Q: And do you -- do you remember being asked by the officer: Well, why are you here?

A: Yes.

Q: Okay. Do you mind if we replay that, just so we can --

A: Mmm-hmm.

4

A-3082-24

Q:  -- so we can hear it firsthand?

After more questioning, plaintiffs' counsel, again, reminded defendant the purpose of showing the video was referential.  He said:

> Q:  Well, I'd like to help refresh your recollection by playing another snippet of this video where you were specifically asked if you saw this as harassment.
>
> A:  Okay.
>
>  . . . .
>
> OFFICER:  (Indiscernible) -- the property, what they're wrong about --
>
> DEFENDANT:  They're wrong.  A lot of --
>
> OFFICER:  -- but --
>
> DEFENDANT:  -- (indiscernible) –
>
> OFFICER:  -- what there's -- what there's wrong about, but –
>
> UNIDENTIFIED:  Yeah, they've been proven in court.
>
> OFFICER:  It's proven in court -- in court, so --
>
> DEFENDANT:  See --
>
> OFFICER:  -- they're already wrong, like --
>
> DEFENDANT:  -- it doesn't --

A-3082-24

> OFFICER: -- it's a freedom of speech, I'm saying. You could say whatever you want. They didn't threaten you, right, did nothin' or anything like that?
>
> DEFENDANT: Well, no, but now that everybody knows that we're there, the comments that are –

After this questioning, defendant's counsel objected based on N.J.R.E. 106, arguing that plaintiffs' counsel was "picking and choosing what they're playing" and "just playing pieces of [the recording] . . . is objectionable." The court allowed plaintiffs' counsel to play selected portions of the recording, but clarified defendant's counsel would also be permitted to play additional footage during the trial.

Plaintiffs' counsel continued with defendant's direct examination. At one point during her testimony, plaintiffs' counsel again used the BWC video of August 17, 2022 to assist defendant in recalling the conversation with the police officer:

> Q: And, again, you acknowledged that you didn't see those as threatening.
>
> A: I don't remember if I said that at that time.
>
> Q: Well, we're gonna show you another snippet where you -- where that's addressed.

A-3082-24

A:  Okay.

 . . . .

DEFENDANT:  I'm not privy to this information. This is –

UNIDENTIFIED:  "It's because she -- (indiscernible) -- from Facebook.  She was --

DEFENDANT:  "She's an Admin of --

UNIDENTIFIED:  -- she was an --

DEFENDANT:  -- Monroe Township --

UNIDENTIFIED:  -- administrator --

DEFENDANT:  -- okay?

UNIDENTIFIED:  -- and she kicked her off Facebook

DEFENDANT:  Two years ago.

UNIDENTIFIED:  -- two years ago.

OFFICER:  Okay.

DEFENDANT:  So it's been a little sad, like how this has been.  It's like people are not being adults about this, but bottom line is the comments that everybody's put in there –

UNIDENTIFIED:  We think -- (indiscernible) --

A-3082-24

OFFICER: Okay, but you -- but you -- but you didn't print out the comments. Is there anything like threatening or –

DEFENDANT: (Indiscernible) --

OFFICER: -- anything like that?

DEFENDANT: -- threatening. Yes, the comments are still going on. They have hundreds of comments.

OFFICER: Okay.

DEFENDANT: But I'm just saying --

UNIDENTIFIED: So -- (indiscernible) -- can I -- can I say a few –

Defendant's counsel then conducted cross-examination and without referencing any other part of the subject officer's BWC video. Neither party introduced the BWC video recording of August 17, 2022 into evidence.

The jury was charged and began deliberations. During deliberations, the jury asked the court if it could "watch the full [BWC] footage of the video [they] watched in the court again when Kellie and Ken sat with the officer?" Outside the presence of the jury, the court presented the jury's question to the attorneys. The judge stated, "my initial response is no, you have to rely upon your combined recollection of what the evidence showed during the trial." After

pointing out that only "snippets" of the video had been presented to the jury, the judge noted, "it also wasn't admitted as a piece of evidence." In response, plaintiffs' counsel stated, "True. True. . . . It was testimony." The court then responded stating, "So my answer's going to be, I appreciate your diligence, but the answer is, no, you can't see that, you have to rely upon your combined recollection." To which defense counsel replied, "Okay."

Later that day, the jury returned its verdict, finding in favor of defendant. Specifically, the jury found plaintiffs did not "prove by a preponderance of the evidence the lack of reasonable or probable cause for the criminal prosecution[.]" This appeal follows.

On appeal, plaintiffs argue the trial court erred in denying the jury's request during deliberations to review the BWC recording.

## II.

Appellate courts review the trial court's evidentiary rulings "'under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.'" State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010)). We "generally defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the

mark or is not 'based on a mistaken understanding of the applicable law.'" State in the Int. of A.B., 219 N.J. 542, 554 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).  This inquiry assesses whether the court's "decision [wa]s 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

As a threshold matter, the court will determine whether plaintiffs objected to the court's ruling at trial.  Plaintiffs contend that there was a valid objection as demonstrated by the interaction between the court and counsel.  We are not persuaded.

In order to preserve an issue for appeal, "a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and the grounds therefor." R. 1:7-2.  This Rule "requires a specific request, even an informal one, and an objection to the court's adverse ruling." Dalton v. Barone, 310 N.J. Super. 375, 380 (App. Div. 1998).  "'Without an objection at the time a jury instruction is given, there is a presumption that the charge was not error and was unlikely to prejudice the [party's] case.'" Willner

A-3082-24

v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (quoting State v. Montalvo, 229 N.J. 300, 320 (2017)) (internal quotation marks omitted).

"[T]he '[f]ailure to make a timely objection indicates that . . . counsel did not believe the remarks were prejudicial at the time they were made,' and it 'also deprives the court of the opportunity to take curative action.'" Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 523 (2011) (second alteration in original) (quoting Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009)). When an appellant does not preserve an appeal by placing an objection on the record, appellate review is subject to the plain error rule under Rule 2:10-2 which provides:

> Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result, but the appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court.

The Supreme Court has reiterated this sentiment, holding where a party "did not object to any of the trial court rulings that he [or she] contends were error, [the Appellate Division] review[s] the issues presented for plain error." State v. Clark, 251 N.J. 266, 286-87 (2022).

A-3082-24

"The mere possibility of an unjust result" stemming from an error "is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016). "In the context of a jury trial, the possibility must be 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. G.E.P., 243 N.J. 362, 389-90 (2020) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)). Thus, the plain error standard requires a determination of "(1) whether there was error; and (2) whether that error was 'clearly capable of producing an unjust result'; that is, whether there is 'a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Dunbrack, 245 N.J. 531, 544 (2021) (omission in original) (citation omitted) (quoting Funderburg, 225 N.J. at 79). The plain error rule sets a "high standard" that "provides a strong incentive for counsel to interpose a timely objection, enabling the trial court to forestall or correct a potential error." State v. Santamaria, 236 N.J. 390, 404 (2019) (quoting State v. Bueso, 225 N.J. 193, 203 (2016)).

Here, the record shows the following exchange regarding the jury's request for playback of the officer's full BWC video:

> [PLAINTIFFS' COUNSEL]: Yeah. My feeling is if they want to see the evidence, they should, logistically, the computer isn't here. The --

THE COURT: Well, but it also wasn't admitted as a piece of evidence.

[PLAINTIFFS' COUNSEL]: True. True.

THE COURT: It was just --

[PLAINTIFFS' COUNSEL]: It was testimony.

THE COURT: -- testimony, really. So my answer's going to be, I appreciate your diligence, but the answer is, no, you can't see that, you have to rely upon your combined recollection --

[PLAINTIFFS' COUNSEL]: Okay.

THE COURT: -- of what you saw. Okay?

From the record, it is clear that counsel agreed with the court's assessment of the evidence, that no part of the video - much less the "full" video was admitted into evidence, and that the evidence available for the jury's consideration was the testimony of the witness. The Roberts' counsel also agreed to the manner in which the court would respond to the jury's request for replay of the full BWC video. Hence, considering the totality of the exchange between the court and counsel, we conclude the Roberts did not object to the court's ruling. Accordingly, our review is for plain error or error which is "clearly capable of producing an unjust result." See State v. Adams, 194 N.J. 186, 207 (2008) (quoting R. 2:10-2).

Our Supreme Court has noted, "the response to a jury's request for a readback of testimony or a replay of a video recording is vested in the discretion of the trial judge." State v. A.R., 213 N.J. 542, 555-56 (2013). "Generally, once an exhibit has been admitted into evidence, the jury may access it during deliberations, subject to the court's instructions on its proper use." State v. Burr, 195 N.J. 119, 133-34 (2008).

We are satisfied the court did not mistakenly exercise its discretion in its decision not to allow the playback of the officer's full BWC video that was used at trial to refresh the witness's recollection and not admitted into evidence. We are also convinced the court properly instructed the jury:

> Members of the jury, I received your note which had the question of "Can we watch the fully body[-]cam footage of the video we watched in the court again when Kell[ie] and Ken sat with the officer?"
>
> The answer to that question is no, you can't. First reason is the full body[-]cam footage wasn't shown. You can -- just parts of it were. But you have to rely upon your combined recollection of what the footage showed going forward. So that's the answer to the question you have.

The jury was not deprived of evidence presented at trial. Rather, in reaching its verdict, the jury had the benefit of considering all of the evidence

14

introduced at trial. Thus, we do not perceive any error, much less plain error. We are also satisfied that the court's ruling did not result in an unjust result.

Further, plaintiffs' reliance on State v. Knight, 477 N.J. Super. 400 (App. Div. 2023) is misplaced. The court in Knight dealt with the issue of playback of a surveillance video in slow motion. As the court summarized, "[the] key issue raised by both defendants is whether the trial court erred by allowing the jury to observe multiple times, in slow motion and with pauses, an approximately six-second segment of a surveillance video." Id. at 404. The Knight court found no reversible error in permitting the jury to view the slowed video footage. Id. at 405. Critically, the videos in Knight were admitted into evidence. These issues are not present in this case.

Plaintiffs' reliance on State v. Michaels, 264 N.J. Super. 579 (App. Div. 1993) is also misplaced.[1] The court in Michaels considered the propriety of permitting a jury to play back the prerecorded closed circuit television interviews of juvenile sexual assault victims pursuant to N.J.S.A. 2A:84A-31.4(e), a statute designed to protect victims of certain crimes. Michaels, 264 N.J. Super. at 586. This case does not involve playback of video testimony.

---

[1] See also State v. Michaels, 136 N.J. 299 (1994).

A-3082-24

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3082-24