216 N.J. Super. 513 (1987)
524 A.2d 455
KENNETH HENKER AND KATHRYN HENKER, PLAINTIFFS-RESPONDENTS,
v.
JOHN PREYBYLOWSKI, III, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 12, 1986.
Decided April 7, 1987.
*515 Before Judges ANTELL, BRODY and D'ANNUNZIO.
Chasan, Leyner, Tarrant & D'Italia, attorneys for appellant (Marie E. Robinson on the brief).
Giordano, Halleran & Ciesla, attorneys for respondents (Norman M. Hobbie of counsel; Michael J. Canning on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
This appeal requires us to consider the circumstances in which it is proper to use remittitur to avoid a new trial after a jury has returned an excessive verdict in a personal injury action. The case differs from reported cases in that liability was not at issue.
Plaintiff Kenneth Henker was operating an automobile when it collided with a vehicle operated by defendant. Kenneth's wife, plaintiff Kathryn Henker, was a passenger in his car and sues per quod. A jury in an earlier trial had found that the accident was the result of defendant's sole negligence. At the *516 damages trial, plaintiffs contended that the accident caused permanent soft tissue injury to Kenneth's back. Defendant offered no evidence, relying on the jury's evaluation of plaintiffs' evidence. The jury awarded Kenneth $250,000 and Kathryn $45,000. The trial judge granted a new trial of the damages issues unless Kenneth agreed to accept $33,000 plus interest and Kathryn agreed to accept $2,000 plus interest. Plaintiffs accepted the lower sums and defendant appeals, contending that the judge should have granted a new trial unconditioned by a remittitur. We agree and reverse.
Remittitur and its converse additur have been a settled part of our jurisprudence at least since additur withstood constitutional attack in Fisch v. Manger, 24 N.J. 66, 80 (1957). "The term remittitur is used to describe an order denying the defendant's application for new trial on condition that the plaintiff consent to a specified reduction in the jury's award...." Id. at 72. The practice is consistent with the defendant's constitutional right to a jury trial because after the reduction, what remains had been "included in the verdict along with the unlawful excess,  in the sense that it ha[d] been found by the jury,  and ... the remittitur has the effect of merely lopping off an excrescence...." Id. at 85 (Heher, J. concurring) (quoting from Dimick v. Schiedt, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603, 611 (1935)). Ordinarily remittitur may and should be used to reduce an excessive jury verdict. Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 330-331 (1970).
An "excessive" verdict in this context is one which "is so disproportionate to the injury and resulting disability shown as to shock [the trial judge's] conscience and to convince him that to sustain the award would be manifestly unjust." Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977). Plaintiffs concede that the verdict was excessive and argue that a remittitur was proper.
*517 Remittitur may not be used, however, to save any part of a verdict rendered entirely defective by the taint of prejudice, partiality or passion. Defendant contends that the verdict here was so grossly excessive that it should count for nothing and therefore only a new trial will satisfy his constitutional right to a jury trial. In a case where a jury had returned allegedly excessive awards following trial of both liability and damages issues, the Supreme Court stated that a verdict may be so grossly excessive as to demonstrate prejudice, partiality or passion by its excessiveness alone:
[Remittitur] may be employed only in cases where, if the plaintiff declines the reduction, the separate issue of liability having been clearly and properly decided, he must submit to a new trial as to damages. If, however, the award of damages is so grossly excessive as to demonstrate prejudice, partiality or passion and thus to generate the feeling that the entire verdict was tainted, a remittitur is improper. The correct procedure in such a case is an order for a new trial on all issues. So in the present matter, if the trial court concluded that the plaintiffs' verdicts were so grossly excessive as to infect the entire result and to visit a manifest injustice upon the defendant if allowed to stand, the remedy was an entire new trial. [Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227, 231 (1971) (emphasis added).]
Thus where a jury award is not only shockingly excessive but also "so grossly excessive as to demonstrate prejudice, partiality or passion," no part of the verdict is salvageable and remittitur is improper even if damages had been the only issue tried.
The award here was so grossly excessive as to demonstrate prejudice, partiality or passion thereby tainting the verdict entirely. A new trial is clearly called for.
Where a verdict is shockingly high but is not by itself so grossly excessive as to demonstrate prejudice, other factors tending to infect the verdict with prejudice, partiality or passion must be carefully considered to determine whether remittitur is proper. Had there been a closer question here as to whether the verdict was grossly excessive, remittitur would nevertheless have been improper because the likelihood that prejudice infected the verdict was further enhanced by the inflammatory *518 remarks of plaintiffs' attorney in his closing statement. A sampling will suffice.
Plaintiffs' attorney accused defendant of acting in bad faith to defeat plaintiffs' liability and damages claims:
[Plaintiffs] are people that were forced to go to court before because defendant challenged them on liability. We won. One hundred percent. Does defense give up? No. They come back now and they challenge us on our injuries with no evidence.
The fact that defendant offered no evidence in the damages trial is not evidence that he was acting in bad faith. Defendant disputed the worth of plaintiffs' evidence and acted properly by having a jury resolve the dispute. There is no evidence that defendant acted in bad faith in either the liability or damages trial. "An attack by counsel upon a litigant's character or morals, when they are not an issue, is a particularly reprehensible type of impropriety." Paxton v. Misiuk, 54 N.J. Super. 15, 22 (App.Div. 1959). It is even more reprehensible when, as here, it is baseless.
Plaintiffs' attorney used defendant's attorney as a target of repeated invectives. He began his closing statement by accusing defendant's attorney of wanting the jury to evaluate the evidence unfairly, of trying to deceive the jury, of deliberately distorting the evidence, of playing "a game," of being
here for one purpose, and that's to hold down the damages as much as possible. I can't tell you how much to give, but he's trying to lowball it. He wants you to lowball it.
Commenting on the fact that defendant did not introduce medical evidence, plaintiffs' attorney asked sarcastically, "Where is [defendant's attorney's] MD degree?" At one point he accused defendant's attorney of being "pretty sharp." Perhaps none of these comments standing alone is out of bounds, but taken together they represent a deliberate effort by plaintiffs' attorney to have the jurors see themselves as destroyers of evil forces, personified by defendant and his attorney, that have been depriving his clients of justice. The fact is that defendant's *519 attorney can be faulted for little more than inexperience as he listened to this diatribe without objection.
We made it abundantly clear in Tabor v. O'Grady, 59 N.J. Super. 330, 340 (App.Div. 1960) that a plaintiff's attorney is not free to indulge "in unjustified aspersions on defense counsel's motives."
Counsel for the plaintiffs ... accused his adversary of playing "a game of checkers ... to save a few dollars for his client's pocketbook...." The defense was unwarrantably described as being "replete with misleading red herrings" and as being based on trickery, shameful conduct, and the pulling of "stunts." At one point the defendant's attorney was charged with poisoning the minds of the jurors. [Id. at 340-341.]
In a similar vein the Supreme Court has said:
To suggest in a public forum, as the prosecutor did here, that a defense counsel's sole objective in a murder trial is acquittal, is to demean the profession generally and to use the dignity of the prosecutor's office not only to disparage counsel but also the quality of the evidence he has submitted for consideration. [State v. Thornton, 38 N.J. 380, 397 (1962), cert. den. 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963).]
Finally, plaintiffs' attorney flouted the time-unit rule and invoked the prohibited "golden rule" in arguing the measure of damages. Indeed, in addressing the jury he used the very example interdicted in Cox v. Valley Fair Corp., 83 N.J. 381 (1980), when he declaimed:
Remember the wisdom tooth, a little canker sore in your mouth. You can't get rid of it. You may take Tylenol. Or take a fractured tooth, finger, a cut, a burn. What is that pain worth for one hour? You've gone to doctors and dentists. An anesthesiologist, you know how much he charges just to limit or prevent pain during the course of an operation. You know how much a dentist charges to give a shot of Novocain so you don't feel pain for ten, fifteen minutes. How much is that pain worth for one hour? When you get that hour, think about the thousands of hours that Ken Henker has suffered pain just the last three years ... The jury is going to tell how much is owed him for that pain, thousands of hours in the past and thousands of hours in the future.
The Supreme Court found two faults with that kind of appeal to a jury:
First, there are suggestions that the members of the jury consider the few extra dollars they would be willing to spend to avoid the pain of a tooth extraction and to think what it means to suffer on a daily basis. This is a subtle appeal to the "golden rule," i.e., that the members of the jury consider what one day of pain and suffering or, conversely its avoidance, would be worth to them. Second, the summation plainly suggests a per diem formula for calculating plaintiff's damages for pain and suffering. [Cox, 83 N.J. at 385.]
*520 The time-unit rule has been relaxed to permit a party to suggest
that unliquidated damages be calculated on a time-unit basis without reference to a specific sum. In the event such comments are made to a jury, the judge shall instruct the jury that they are argumentative only and do not constitute evidence. [R. 1:7-1(b).]
The trial judge did not give the cautionary instruction required by the rule nor did either party request him to do so.
In the future, a plaintiff's attorney intending to use the time-unit argument in his closing statement must, before closing statements begin, request the judge to give the cautionary instruction required by R. 1:7-1(b). Making the request before summations not only assures that the judge will give the instruction, but also serves as timely notice to defense counsel so that he may deal with the argument in his closing statement if he so chooses.
The "golden rule" argument, i.e., asking jurors to award damages in the amount that they would want for their own pain and suffering, is still prohibited.
Permitting plaintiffs' attorney to persist in making unwarranted prejudicial appeals to the jury was probably plain error tainting the entire verdict and thereby entitling defendant to a new trial regardless of whether the verdict was so grossly excessive as to demonstrate prejudice. See Haid v. Loderstedt, 45 N.J. Super. 547, 551 (App.Div. 1957) (plain error to permit defense attorney falsely to imply to jury that defendant uninsured). But even if the error had not been plain and the verdict not so grossly excessive, the result would be the same because the demonstrable effect of these tactics was the verdict's conceded excessiveness. Where a shockingly high verdict is not so grossly excessive as to demonstrate prejudice, but during the trial the jury was exposed to influences having a clear capacity to infect the verdict with prejudice, partiality or passion, the verdict is entirely tainted and cannot be salvaged in part through the use of a remittitur.
Reversed and remanded for a new trial as to damages.
*521 D'ANNUNZIO, J.S.C. temporarily assigned (concurring).
I concur in the reversal and remand for a new trial on damages because of the probable nexus between the excessive verdict and the excesses of plaintiffs' counsel during summation. Utilization of remittitur empowers plaintiffs to impose on defendant a money judgment in an amount selected by the trial judge as an alternative to a new trial. If remittitur is utilized in this case, plaintiffs would benefit from the inappropriate tactics of their attorney. However, I disagree with the necessity and rationale of the majority's alternative ground for reversal.
The majority's approach requires a trial judge who is deciding a remittitur application to engage in a two step analysis. The judge must first determine whether the damages verdict is "so disproportionate to the injury and resulting disability shown as to shock his conscience ..." Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977). If the verdict is shocking to the conscience, remittitur is an available remedy unless the trial judge also determines that the "award is not only shockingly excessive but also `so grossly excessive as to demonstrate prejudice, partiality or passion.'" Majority opinion, p. 517. In that event, the majority deems remittitur improper and a new trial the only alternative.
The majority's approach impairs the value of remittitur in the trial limited to damages, the context in which it can be most effective. This approach is contrary to the efforts of our Supreme Court to encourage the use of remittitur in order to save the public and private expense of retrials. Id. at 595. Fritsche v. Westinghouse Electric Corp., 55 N.J. 322, 330-331 (1970).
The majority's reliance on Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227 (1971) is misplaced. The language from Taweel cited by the majority is dictum and is taken out of context. It is dictum because the Supreme Court ultimately held that the verdict was not excessive and reinstated it. Id. at 236-237. The context of Taweel was a trial on liability and *522 damages. The court was drawing attention to the fact that an excessive verdict may indicate jury malfunction on issues other than damages. Remittitur cures a defect in the damages verdict but it cannot cure defects in verdicts on other issues. That is why the language quoted from Taweel refers to taint of the entire verdict. In the case at bar, the trial was limited to damages.
The majority's approach ignores the rationale of remittitur. By definition, only damage awards which are the result of jury disfunction are subject to remittitur. That disfunction may be the result of passion, prejudice, partiality or mistake. Regardless of the source of the disfunction, remittitur cures it, as the majority points out, by "lopping off" the offensive excess. In the context of a trial limited to damages, the cure of remittitur is complete because there is nothing else to cure.[1] Accordingly, the exercise of attempting to define and articulate a distinction between a verdict which shocks the conscience and one which is grossly excessive has no real purpose in the context of this case.
NOTES
[1] However, as previously indicated, I agree that the benefits of remittitur should be withheld to deter the use of inappropriate tactics.