Steven COVERDALE, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 473,2003.

Supreme Court of Delaware.

Submitted: Feb. 10, 2004.
Decided: March 11, 2004.

Kathryn van Amerongen, Assistant Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, for appellee.

Before HOLLAND, BERGER and STEELE, Justices.

HOLLAND, Justice:

On January 13, 2003, Coverdale was indicted for Assault in the First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession of a Deadly Weapon by a Person Prohibited ("PDWPP"), and Aggravated Menacing. Following a jury trial, Coverdale was convicted as charged. This is Coverdale's direct appeal.

Coverdale has raised two issues on appeal. First, he contends that the trial judge improperly excluded evidence of the victim's arrest on felony drug charges. Second, Coverdale contends that the prosecutor's closing argument improperly denigrated the role of defense counsel. We have concluded that both of Coverdale's arguments are without merit.

### Facts

The record reflects that on the evening of November 27, 2002, Keno James was standing outside his house when he was approached by a black male. The man, whom James did not know, asked him if he knew a particular person. James replied that he did not. The man then pulled out a handgun. James attempted to run away, but the man fired several bullets. James was shot once in the back. James first ran to his home, and then to the corner store in an attempt to find some help.[1] A man at the corner store called 911.

During an interview with Detective Hall, James described his assailant as a short stocky black male who had a dark scar or mark on his left eye and was wearing a blue jumpsuit. Several days later, James was shown a photographic line-up. From that photographic array, James positively identified Steven Coverdale as the man who shot him.

On the basis of this identification, the police obtained a warrant to search Coverdale's residence. At his residence, located approximately six blocks from the shooting, the police recovered a pair of blue coveralls. The gun was never recovered.

### Witness Drug Arrest Irrelevant

■ At trial, defense counsel sought to impeach James' testimony by introducing his recent arrest as a juvenile for Possession with Intent to Deliver Marijuana, and several weapons offenses related to a 9-millimeter handgun. This arrest occurred six months *after* the shooting and three weeks before trial. The Superior Court judge ruled that James' arrest for drug possession was irrelevant, but allowed the defense to question James regarding his possession of the 9mm handgun, because the police had found 9mm shell casings near the scene of the shooting.[2] It was undisputed, however, that James was shot with a .25 caliber bullet, and five .25 caliber bullet casings were found at the scene.

■ Coverdale argues that he "should have been allowed to cross-examine James about the fact the he was a drug dealer and in reality, that was the reason [James] was stating outside in a known drug area after dark." It is within the discretion of the trial court to admit specific instances of conduct of a witness into evidence for the purpose of impeaching the witness' character for truthfulness.[3] In exercising its discretion, a trial judge should consider: whether the testimony of the witness being impeached is crucial; the logical relevance

---

1. Apparently, James' sister's boyfriend was home, but James did not realize this. Additionally, the telephone at the residence was not working.

2. The 9mm casings were found around the corner from where James was shot.

3. DRE 608(b).

of the specific impeachment evidence to the question of bias; the danger of unfair prejudice, confusion of issues, and undue delay; and whether the evidence of bias is cumulative.[4]

The record reflects that the trial court considered these factors and properly determined that the danger of unfair prejudice to the State outweighed any logical relevance that James' drug arrest might have to the charges against Coverdale. While James' testimony was crucial in that he was the sole witness in the case, evidence of his recent drug arrest as a juvenile does not, by itself, tend to demonstrate any bias toward Coverdale or lack of credibility. Drug offenses are generally not crimes of dishonesty.[5] Accordingly, even if James had been convicted of a drug offense as an adult, evidence of that conviction would only be admissible in the exercise of the trial judge's discretion.[6] The trial judge acted appropriately within her discretion by excluding evidence that James, a juvenile, was arrested on drug charges several months after he had been shot.[7]

### *Isolated Comment Harmless*

Coverdale's second contention on appeal is that the prosecutor's use of the phrase "red herring" during closing arguments deprived him of the right to a fair trial. The record reflects that the prosecutor described evidence of the 9mm gun as a "red herring." Coverdale's defense counsel objected to this phrase. Defense counsel did not, however, request either a curative instruction or a mistrial.

Coverdale argues that the "red herring" comment improperly denigrated the role of defense counsel and thus precluded him from having a fair trial. Coverdale relies primarily on two New Jersey cases to support his contention.[8] The two cases cited by Coverdale both involved repeated remarks by the prosecuting attorneys and their cumulative effect on the jury's perception of defense counsel.[9] In Coverdale's case, only one isolated remark is alleged to be improper.

The record in Coverdale's case reflects that the prosecutor's reference to the 9mm casings located near the scene of the shooting as a "red herring" did not denigrate the role of defense counsel. There was no dispute that James was shot in the back with a .25 caliber handgun. In context, the "red herring" remark suggested to the jury that the 9mm casings had no relevance. We have concluded that the prosecutor's single reference to the 9mm shell casings as a "red herring" had no effect on Coverdale's right to a fair trial.

### *Conclusion*

The judgments of the Superior Court are affirmed.

---

4.  *Weber v. State,* 457 A.2d 674, 681 (Del. 1983).

5.  *Gregory v. State,* 616 A.2d 1198 (Del.1992) (holding that defendant's prior conviction for possession with the intent to deliver marijuana should not have been allowed in evidence).

6.  D.R.E. 609(a)(2).

7.  *Weber v. State,* 457 A.2d at 681.

8.  *Geler v. Akawie, et. al,* 358 N.J.Super. 437, 818 A.2d 402 (App.Div.2003); *Henker v. Preybylowski,* 216 N.J.Super. 513, 524 A.2d 455 (App.Div.1987).

9.  *See Geler v. Akawie, et. al,* 358 N.J.Super. 437, 818 A.2d 402 (App.Div.2003); *Henker v. Preybylowski,* 216 N.J.Super. 513, 524 A.2d 455 (App.Div.1987)