**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1663-17T1

MIGDALIA GONZALEZ-PACE,

    Plaintiff-Appellant,

v.

MELISSA MALIK,

    Defendant-Respondent,

and

THERESA M. MALIK,

    Defendant.

_____

> Argued April 1, 2019 – Decided July 19, 2019
>
> Before Judges Haas and Sumners.
>
> On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1170-15.
>
> Mark J. Molz argued the cause for appellant.
>
> Emma Kristine Bradley argued the cause for respondent (Law Office of Debra Hart, attorneys; Emma Kristine Bradley, of counsel and on the brief).

PER CURIAM

In this verbal threshold case, plaintiff Migdalia Gonzalez-Pace appeals from a November 3, 2017 order denying her motion for a new trial. Plaintiff contends defense counsel's characterization of her counsel as "bullying" defendant Melissa Malik[1] on the witness stand was prejudicial and "tainted jury deliberations." She also asserts the jury's verdict was against the weight of the evidence because defendant essentially admitted liability for the car accident and she proved that she sustained a permanent injury. For the reasons set forth below, we affirm.

I.

The following testimony was adduced during a six-day jury trial in September 2017, before Judge Michael J. Kassel. On the evening of December 11, 2012, plaintiff was travelling southbound on North King's Highway in Cherry Hill. With no other cars insight, she saw defendant's car stopped at the intersection of Crooked Lane and North King's Highway. While stopped at the intersection stop sign, defendant saw plaintiff's car driving in the southbound right lane on King's Highway, and determined she had enough time to turn left – across the two northbound lanes and the median – onto the southbound side of

_____

[1] Theresa Malik was dismissed on August 18, 2017, is not a party to this appeal.

A-1663-17T1

the highway. However, as defendant made her turn, she entered the right lane and the two cars collided. Plaintiff testified that despite initially seeing defendant's car at the intersection, she did not see it again until just before the collision. Police arrived at the scene, and plaintiff declined medical assistance and drove home.

Two hours later, however, plaintiff experienced some pain and her friend drove her to the hospital emergency room. X-rays were taken and she was prescribed muscle relaxants, anti-inflammatories, and analgesics. She was released the same day.

According to plaintiff, she was active and held a full-time job prior to the accident, however thereafter she had difficulty: driving, sleeping, swimming, and accomplishing certain household tasks, such as taking out the trash, shoveling snow, and completing yard work. Prior to the accident, plaintiff suffered from plantar fasciitis, carpal tunnel syndrome, and arthritis in her hands and feet.

Nine days after the accident, plaintiff sought treatment from Dr. Marc Kahn, M.D., an orthopedic surgeon, who performed various tests, including a Spurling's test, to determine whether there was an injury to her cervical spine. He noted there was no tenderness and full range of motion in plaintiff's neck,

A-1663-17T1

and she did not have muscle spasms. Likewise, the Spurling's test did not reveal any injuries. Dr. Kahn recommended physical therapy visits and plaintiff attended approximately eight visits before discontinuing due to scheduling issues.

On February 27, 2013, plaintiff saw another orthopedic surgeon, Dr. David Weisband, M.D., complaining of pain from her neck and lower back, and numbness in her upper extremities. His de benne esse deposition was presented to the jury. He also indicated she had a history of rheumatoid arthritis. After reviewing her x-rays from the post-accident emergency room visit, Dr. Weisband ordered an EMG and conducted a Spurling's test on plaintiff. He determined, based on the positive Spurling's test and EMG results, that plaintiff suffered a cervical radiculopathy with disk bulging and damage, lumbar radiculopathy in the nerves in her leg from a herniated L4-5 disk, and aggravated rheumatoid arthritis in her hands and feet secondary to the car accident. Thus, he opined that, within a reasonable degree of medical certainty, plaintiff suffered a permanent injury to her neck and back.

In August, upon Dr. Weisband's recommendation, plaintiff consulted Dr. Kalliny,[2] a pain management physician. Dr. Kalliny administered an epidural

---

[2] His full name is not provided in the record.

A-1663-17T1

injection in plaintiff's lower back to alleviate her pain. Unfortunately, plaintiff suffered a "steroid flare-up," which worsened her back pain; forcing her to cease further injections. Plaintiff had a follow-up appointment with Dr. Kahn in October, and was not examined by another physician concerning the car accident during the next three years. She filed her personal injury complaint against defendant in October 2014, alleging permanent injuries from the car accident.

In April 2016, plaintiff sought the aid of Dr. Xerxes Oshidar, M.D., a chiropractic physician, for headaches, ringing in her ears, memory issues, irritability, radiating pain from her lower back travelling down to her legs, and anxiety. Dr. Oshidar testified at trial that his examination of plaintiff disclosed: a right leg limp; normal deep tendon reflexes; limited range of motion; pain and spasms; and some weakness in the right bicep and tricep, wrist extensions, and legs. He conducted cognitive tests, and noted she had diminished sensory output and impaired balance. According to the doctor's prognosis, he wanted to "see how treatment would turn out," but expected favorable results for plaintiff.

Defendant retained Dr. Mark A. Sobel, M.D., as a medical expert. Based upon his examination of plaintiff in March and undertaking a document review of her medical records, including her Veterans Affairs Hospital records prior to

A-1663-17T1

and after the car accident, he opined within a reasonable degree of medical certainty that as a result of the accident, plaintiff,

> sprained her lower back and possibly the lowest part of her thoracic spine. So the thoracic and lumbar sprains[.] . . . And . . . there is preexisting arthritis in these areas. So she was treated for sprains/arthritis with therapy and then usual things. And with some continued pain, even had an epidural injection. So low back and thoracic injuries.

He further opined that plaintiff's lower back sprain was resolved, some of it within only a few months. His opinion also reflected plaintiff's report of two prior accidents she experienced. One in 1996, in which she suffered neck injuries, pains in her feet and hands, numbness and tingling, and a temporomandibular joint disorder that required surgery; and the second in 2004, where she claimed she suffered no injuries. Thus, Dr. Sobel determined with a reasonable degree of medical certainty that plaintiff did not suffer any permanent injuries because of the car accident with defendant.

Plaintiff called defendant to testify on plaintiff's case in chief. During her re-direct, defendant acknowledged that nothing prevented her from observing that plaintiff's vehicle was still approaching in the right lane, and divulged that "100 percent if [she had] seen [plaintiff,] [she] could have hit the brakes," to stop the car and avoid the accident. She further stated that when she evaluated

6

her decision to turn left at the stop sign, she "did not feel it was necessary" to look a second time.

Plaintiff's counsel also focused on inconsistent statements between defendant's interrogatories answered two years prior to trial and her testimony on the bench, frequently referring to her as a "liar," but not allowing her the opportunity to fully respond. At one point, plaintiff's counsel opined to defendant, a first-year law school student, that lying was a violation of the Rules of Professional Responsibility, and defense counsel objected on grounds that the line of questioning was inappropriate, and the judge agreed.

During closing, defense counsel stated: "So what happened? We get a young woman up on the stand. We bring her up here. We bully her. We don't let her answer questions. We don't let her . . . explain herself." Plaintiff objected, arguing it was an improper statement by defense counsel and requested a mistrial. After a brief sidebar discussion, the judge gave a limiting instruction to the jury, stating,

> please note that each attorney is doing their job when they[ are] either examining or cross-examining witnesses . . . . Sometimes to do your job properly it does require you to either directly confront the witness with an allegation that the witness is not being truthful or to intimate that, but none of that stuff should be taken personally.

A-1663-17T1

At the conclusion of trial, the jury found that both defendant and plaintiff's negligence were a proximate cause of the accident, and apportioned fifty-five percent liability on defendant and forty-five percent liability on plaintiff. The jury also found that plaintiff did not suffer any permanent injury as a proximate cause of the accident, and thus, did not satisfy N.J.S.A. 39:6A-8(a) requirements for non-economic losses.

Plaintiff's counsel motioned for a new trial, arguing that defense counsel's comment referring to her counsel as a "bully" unduly influenced the jury's decision and constituted a manifest injustice warranting a new trial. Following argument, Judge Kassel denied the motion, stating in his oral decision that while defense counsel's comments were improper, they were "borderline" and "garden variety," but not a reason to grant a new trial. He emphasized that the curative charge sufficiently deterred any undue influence that could have resulted from defense counsel's statement.

## II.

On appeal, plaintiff raises the same arguments she raised before the trial judge, with the additional assertion that the jury's verdict was against the weight of the evidence because defendant admitted she was entirely liable for the accident and damages were proven.

We begin with the principles that govern our review of a trial court decision on a motion for a new trial. Rule 4:49-1(a) provides that a trial judge shall grant a new trial if, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." We review decisions on motions for a new trial employing the same standard as governs the trial court, "whether there was a miscarriage of justice under the law." Risko v. Thompson Muller Automotive Group, Inc., 206 N.J. 506, 522 (2011). We must "give 'due deference' to the trial court's 'feel of the case.'" Id. (quoting Jastram v. Kruse, 197 N.J. 216, 230 (2008)). Accordingly, trial courts should exercise their discretion to grant a mistrial "with great reluctance, and only in cases of clear injustice. . . . Neither trial nor appellate courts may grant a new trial unless it clearly appears there was a miscarriage of justice." Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005). Thus, absent an abuse of discretion by the court, we defer to its decision not to declare a mistrial. Boryszewski, 380 N.J. Super. at 391.

A.

In her first brief point, plaintiff contends her right to a fair trial was jeopardized when defense counsel stated during summation, "[s]o what

happened? We get a young woman up on the stand. We bring her up here. We bully her. We don't let her answer questions. We don't let her . . . explain herself." She maintains the comment was a disparaging personal attack on her counsel, which exposed the jury "to influence having a clear capacity to infect the verdict with prejudice, partiality or passion" and tainted the verdict. See Henker v. Preybylowski, 216 N.J. Super. 513, 520 (App. Div. 1987). We find no merit in plaintiff's contentions.

A reviewing court evaluates challenged remarks not in isolation but in the context of summation as a whole. State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008) (citing State v. Carter, 91 N.J. 86, 105 (1982)). Also, the challenged remarks are to be "viewed in the context of the entire record[.]" State v. Bey, 129 N.J. 557, 622 (1992). Furthermore, comments in summation do not warrant a new trial unless they "are so prejudicial that 'it clearly and convincingly appears that there was a miscarriage of justice under the law.'" Bender v. Adelson, 187 N.J. 411, 431 (2006) (quoting R. 4:49-1(a)).

It is well-established that "[f]leeting comments, even if improper, may not warrant a new trial, particularly when the verdict is fair." Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009). However, our courts strongly discourage "derisive statements about parties, their counsel, or their witnesses."

Sczecina v. PV Holding Corp., 414 N.J. Super. 173, 178 (App. Div. 2010). This is particularly the case where the comments are "unduly harsh" and constitute "an attack on defendant's character and [their] witness's integrity." Rodd v. Raritan Radiologic Assocs., 373 N.J. Super. 154, 171 (App. Div. 2004).

We discern no abuse of discretion in Judge Kassel's decision to deny plaintiff's motion for a new trial because of defense counsel's "bullying" comments. Not only were the comments fleeting, but they were not so improper as to cause a miscarriage of justice by allowing the jury's verdict to stand. They were not unduly harsh nor an attack on the character of plaintiff's counsel. Defense counsel was merely commenting on the aggressive manner, without any gratuitous ill will, in which his client was being cross-examined regarding the cause of the accident. Further, any taint that the comments could have caused to the jury's deliberative process was corrected by the judge's curative instruction.

## B.

Turning to plaintiff's remaining brief points, she urges that we reverse the jury's verdict and remand for a new trial because (1) defendant admitted to complete liability for the car accident during her trial testimony, and (2) the jury's findings were against the weight of the evidence because she proved

11

liability and damages by a preponderance of the evidence.  In so arguing, plaintiff points to defendant's re-direct testimony:

> Q: Now based on this exhibit and your two markings, can you and I agree that nothing prevented you from looking back to your right to see that [plaintiff]'s vehicle was still coming along in the right-hand lane?
>
> A: I would agree with that statement, correct.

And, defendant further responded:

> Q: And you could have avoided the accident with absolute certainty had you looked and hit your brakes, 100 percent, right?
>
> A: Yes.
>
> Q: Okay.  But that was your intent.  You intended to cross four lanes without looking, right?
>
> A: I did.

Plaintiff argues that through this testimony, defendant admitted complete liability for the accident, which the jury should not have ignored and thus should not have found her comparatively negligent.

As to her damages, plaintiff points out that Dr. Weisband's testimony clearly established, by a preponderance of the evidence and to a reasonable degree of medical certainty, that plaintiff was permanently injured.  He opined that plaintiff has "a cervical radiculopathy with disk bulging, disk damage

A-1663-17T1

. . . ," a herniated L4-5 disk, and "aggravation of pre-existing rheumatoid arthritis" in both her hands and feet "secondary [to] the motor vehicle accident[.]"  Again, we conclude there is no merit to plaintiff's contentions.

"A jury's verdict, including an award for damages, is cloaked with a 'presumption of correctness.'"  Cuevas v. Wentworth Group, 226 N.J. 480, 501 (2016) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)).  In terms of its assessment of the relative strength of the proofs, a jury verdict is "impregnable unless so distorted and wrong, in the objective and articulated view of a judge, as to manifest with utmost certainty a plain miscarriage of justice."  Doe v. Arts, 360 N.J. Super. 492, 502-03 (App. Div. 2003) (quoting Carrino v. Novotny, 78 N.J. 355, 360 (1979)).

Thus, an appellate or trial judge may not "substitute [their] judgment for that of the jury" simply because they would have reached a different conclusion. Dolson v. Anastasia, 55 N.J. 2, 6 (1969).  Rather, a verdict must instill a sense of "wrongness" to justify setting aside a jury verdict, such as a "'lack of inherently credible evidence to support a finding, obvious overlooking or undervaluation of crucial evidence, [or] a clearly unjust result . . . .'" Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996) (alterations in original) (quoting Baxter, 74 N.J. at 599).

13

Defendant acknowledged that nothing stopped her from looking back to her right, as she was turning, to see if plaintiff "was still coming along" in the right lane and, if she had seen plaintiff, she would have applied the brakes, avoiding the accident. However, she stated during re-direct that she did not look to see if plaintiff was closer because she "did not believe [it was] necessary to do after [she] had made the decision and evaluated the decision at the stop sign to continue onward[.]" Thus, she believed it was safe to make a left turn to cross the highway.

Consequently, it appears the jury found some degree of credibility in defendant's testimony, in order to find her fifty-five percent liable for the accident. And the jury could point to plaintiff's testimony that she did see defendant's car at the stop sign and saw the car again, in her peripheral vision, "about maybe two or three car lengths behind," which gave her time to "brake and brace[,]" as a reason to find her forty-five percent liable. Plaintiff testified further that she had a clear view of the highway without any trees or medians obstructing her view. It is not our role to second-guess the jury's verdict where, as here, there was some evidence that supports its verdict. Dolson, 55 N.J. at 6.

Moreover, there is a stronger basis to deny plaintiff's request for a new trial. As Judge Kassel noted, this is a verbal threshold case and because the jury

14

determined plaintiff did not establish she suffered permanent injuries, she is not entitled to damages. Simply put, liability is a non-issue given that plaintiff failed to satisfy the verbal threshold.

Plaintiff's action for damages was subject to the limitation on lawsuit threshold – commonly known as the "verbal threshold" – as set forth in N.J.S.A. 39:6A-8(a), which restricts an accident victim from suing a defendant for noneconomic damages unless she suffers, among other things, "a bodily injury which results in . . . a permanent injury within a reasonable degree of medical probability . . . ."

Based upon our review of the record, we thus discern no legal basis to disturb the judge's decision not to grant a new trial based on the jury's verdict that plaintiff did not vault the verbal threshold. The defense expert, Dr. Sobel, opposed plaintiff's claims of permanent injuries related to this accident based upon the lack of verifiable objective medical evidence. The jury was authorized to find the testimony of plaintiff and her experts that she sustained permanent injuries from the car accident was not credible.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1663-17T1