**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2567-23

NEIL CAIN,

      Plaintiff-Respondent,

v.

ROSA DIMEGLIO,

      Defendant-Appellant,

and

ANDREW WALACHY,

      Defendant.

_____

Argued October 15, 2025 – Decided December 9, 2025

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0826-20.

Patricia W. Holden argued the cause for appellant (Cipriani & Werner, PC, attorneys; Matthew K. Mitchell, of counsel; Patricia W. Holden, of counsel and on the briefs).

Christopher F. Costello argued the cause for respondent (Costello Law Firm, attorneys; Christopher F. Costello, on the brief).

PER CURIAM

While being guided by her global positioning system (GPS), defendant Rosa DiMeglio began attempting a U-turn in the far-left lane on Route 130 in Mansfield. As she neared the U-turn, DiMeglio initially slowed down to make the turn but saw a "No U-turn" sign and stopped in the far-left lane, causing a three-car collision.

Plaintiff Neil Cain, driving behind DiMeglio, slowed down and tapped the back of DiMeglio's vehicle. Defendant Andrew Walachy,[1] who was driving behind plaintiff, then struck the back of plaintiff's vehicle, resulting in more significant damage and injury to plaintiff.

Following five days of trial, the jury returned a verdict in plaintiff's favor, finding DiMeglio sixty-five percent liable. DiMeglio appeals from the March 18, 2024 final judgment awarding plaintiff damages, attorney's fees and costs, as well the August 6, 2021 order denying summary judgment, the March 8, 2023 order barring portions of the de bene esse deposition of plaintiff's expert, Dr.

---

[1] Plaintiff has since settled with Walachy, who is not part of this appeal.

2

Gary Neil Goldstein, and the December 4, 2023 order denying the motion for a new trial.[2]  We affirm.

I.

We glean the pertinent and mostly undisputed facts from the motion and trial record.  Within two years after the June 9, 2018 motor vehicle accident, plaintiff filed a personal injury complaint.  After the close of discovery, DiMeglio unsuccessfully moved for summary judgment.  Next, DiMeglio filed a pre-trial motion seeking to redact portions of Dr. Goldstein's deposition testimony, which the court also denied.

The case proceeded to mandatory, non-binding arbitration.  Thereafter, plaintiff rejected the award and requested a trial de novo.

A jury trial began on October 17, 2023.  DiMeglio "testified that her GPS directed her to make a U-turn approximately [one hundred] feet before a cutout in the highway separating north and southbound lanes of travel."   DiMeglio claimed that the GPS continued to advise her to make a U-turn even though a sign prohibited such turns.

---

[2]  The August 6, 2021, March 8, 2023, and December 4, 2023 orders were not listed in DiMeglio's amended notice of appeal.  However, because these orders were referenced in DiMeglio's case information statement, we will address her arguments appealing these orders.  See R. 2:5-1(h)(1).

Officer James Flacker of the Mansfield Township Police Department testified that the "'No U-Turn' sign [was] located at the cutout to prevent accidents," and the sign was located just after a hill which "affects the visibility of motorists approaching the area where the collision took place."

While traveling behind DiMeglio's vehicle in the left-hand lane at approximately fifty miles per hour, plaintiff noticed DiMeglio's car begin to brake. Plaintiff testified that DiMeglio "did not completely apply [the] brakes" but he saw them "flickering on and off" so he began to decelerate. He considered moving over to the right lane but there were large trucks in that lane, preventing him from changing lanes.

Plaintiff explained that DiMeglio began to turn left toward the U-turn, then aborted the turn, and stopped suddenly in the left lane of the highway. Plaintiff "slammed on his brakes," nearly avoiding any impact with DiMeglio's vehicle; however, he "gently" tapped or touched the rear passenger side of DiMeglio's car. According to plaintiff, at no time did DiMeglio utilize her turn signal prior to veering toward the U-turn.

A few seconds later, Walachy's vehicle slammed into the back of plaintiff's vehicle, pushing it into DiMeglio's car and sending it across the median toward the northbound lanes of traffic. At trial contrary to her

4

statements to Officer Flacker at the scene, DiMeglio denied "that she had come to a complete stop in the left lane, acknowledging that 'it obviously wasn't safe to stop in the middle of the road.' [She] contended that she had simply slowed to [twenty-five miles per hour] when her car was hit from behind." After the accident, DiMeglio apologized to plaintiff, explaining that her GPS directed her to make the U-turn.

The jury returned a verdict, awarding plaintiff $500,000 and apportioning negligence between DiMeglio at sixty-five percent and Walachy at thirty-five percent. The jury did not find plaintiff liable.

After the jury verdict, the court denied DiMeglio's motion for a new trial. On March 18, 2024, the trial court entered final judgment awarding plaintiff: (1) $325,000.00 for pain, suffering, disability and loss of enjoyment of life; (2) $74,727.52 for prejudgment interest through March 15, 2024 pursuant to Rule 4:42-11; (3) $13,226.05 in costs and expenses pursuant to Rule 4:58-2; and (4) $60,420.00 in attorney's fees pursuant to Rule 4:58-2.

On appeal, DiMeglio raises six points, with subparts, for our consideration, contending the trial court erred in denying her pre- and post- trial motions. Although we address the alleged errors in differing order, DiMeglio asserts the trial court erred by denying: (1) her summary judgment; (2) the

5

motion in limine to redact portions of Dr. Goldstein's deposition testimony; (3) the motion for a mistrial based on plaintiff's counsel's alleged improper comments during closing statement; (4) the motion for a new trial alleging the evidence presented at trial warranted a finding in her favor on liability and damages or in the interest of justice; (5) the motion for remittitur or a new trial contending the jury's verdict was excessive, disproportionate to the injury and shocking to the judicial conscience; and (6) by improperly granting plaintiff's motion for final judgment, making improper awards as to interest and attorney's fees.

II.

A.

Summary Judgment Motion

Our review of a trial court's summary judgment order is de novo and governed by the same standard as the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (citation omitted). No special deference is owed to the trial court's legal analysis. RSI Bank v. Providence Mut. Fire. Ins. Co., 234 N.J. 459, 472 (2018) (citing Templo Fuente De Vida Corp., 224 N.J. at 199).

6 <span>A-2567-23</span>

Under Rule 4:46-2(c), summary judgment is warranted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  The main consideration is whether the competent evidence, viewed in the light most favorable to the non-moving party, "[is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  C.V v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  Thus, a court should grant summary judgment when "the evidence 'is so one-sided that [the moving] party must prevail as a matter of law.'"  Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Petro-Lubricant Testing Labs, Inc. v. Adelman, 233 N.J. 236, 257 (2018)).

However, if a genuine dispute of material fact exists, summary judgment is not warranted.  Grande v. St. Clare's health System, 230 N.J. 1, 24 (2017) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citing Brill, 142 N.J. at 540)).  "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party,'"

7

requires resolution by the factfinder. Ibid. (citing Bhagat, 217 N.J. at 38 and quoting R. 4:46-2(c)).

Here, the trial court properly focused on the issue of liability and whether a jury could find DiMeglio's actions were negligent and caused the accident. The court rejected DiMeglio's argument that it did not focus on the other two vehicles who were responsible for maintaining a safe following distance behind DiMeglio's vehicle. Our well-established summary judgment principles require the trial court to view the competent evidential materials presented in a light most favorable to the non-moving parties—plaintiff and Walachy. We agree with the trial court that for purposes of summary judgment, the focus is on whether a rational factfinder could conclude that DiMeglio's actions amounted to negligence.

The court also rejected DiMeglio's assertion that there was no dispute that plaintiff was following too closely behind DiMeglio's vehicle, and that under our case law, a presumption of negligence exists against the party who initiated the contact. See Dolson v. Anastasia, 55 N.J. 2, 10-11 (1969); Stackenwalt v. Washburn, 42 N.J. 15, 27-30 (1954). Although a driver is responsible for maintaining a reasonably safe driving distance, our case law does not impose strict liability when a driver is struck from behind. Dolson, 55 N.J. at 10-11.

A-2567-23

As the Court in <u>Dolson v. Anastasia</u> noted, the "following car" must maintain a safe distance, "having due regard to the speed of the preceding vehicle and the traffic upon the condition of the highway." <u>Id.</u> at 10. Contrary to DiMeglio's argument, the Court addressed how the jury is to be instructed on the issue of negligence under such circumstances, and not how a trial court should apply the summary judgment standard.

We are satisfied, as was the trial court, that a review of the competent evidence in the present case demonstrated that a jury could reasonably conclude that DiMeglio was negligent by attempting an illegal U-turn from the left lane of the highway, without signaling, and stopping suddenly in the left lane. These circumstances present a factual question pertaining to DiMeglio's liability for the accident, which was best resolved by the factfinder and not resolvable as a matter of law. Summary judgment was properly denied.

III.

A.

<u>Motion to Redact Expert's Testimony</u>

DiMeglio argues the court erred in denying her in limine motion to redact a portion of Dr. Goldstein's de bene esse deposition memorialized in the March 8, 2023 order. DiMeglio argues that portions of the testimony were repetitive

and cumulative of Dr. Mark Paiste's testimony, plaintiff's second medical expert, and was therefore prejudicial.

"Our review of the trial court's evidential rulings 'is limited to examining the decision for abuse of discretion.'" Primmer v. Harrison, 472 N.J. Super. 173, 187 (App. Div. 2022) (quoting Ehrlich v. Sorokin, 451 N.J. Super. 119, 128 (App. Div. 2017)). The same abuse of discretion standard applies to our review of an "in limine motion[] adjudicating the admissibility of evidence." Ibid. (citing State v. Cordero, 438 N.J. super. 472, 483-84 (App. Div. 2014)).

An appellant bears the burden of demonstrating the motion court's abuse of discretion in denying this in limine motion. Furthermore, the record on appeal must include the relevant transcripts of the proceedings before the trial court, Rule 2:5-4(a), which the appellant is obligated to provide. R. 2:5-3(a).

DiMeglio argues the court abused its discretion by not redacting portions of Dr. Goldstein's testimony and cites portions of both Dr. Goldstein and Dr. Paiste's depositions played for the jury. Our review, however, is not de novo. Based on the limited record before us, we conclude DiMeglio has not met her burden of demonstrating an abuse of discretion.

B.

Motion for Mistrial

DiMeglio contends the trial court erred in denying her motion for a mistrial after remarks made by plaintiff's counsel during summation regarding defendant's expert witness, Dr. Robert J. Ponzio. "[A] motion for a mistrial is addressed to the sound discretion of the court, . . . . the power to grant such motion should be exercised with the greatest of caution." Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 231 (App. Div. 2020) (quoting Wright v. Bernstein, 23 N.J. 284, 296 (1957)). "Accordingly, '[a]n appellate court will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice.'" State v. Patterson, 435 N.J. Super. 498, 509-10 (App. Div. 2014) (quoting State v. Jackson, 211 N.J. 394, 407 (2012)). Counsel is given "broad latitude in summation," Geler v. Akawie, 358 N.J. Super. 437, 467 (App. Div. 2003), and is "[permitted to] argue from the evidence any conclusion which [][factfinder] is free to reach." Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999).

During summation, plaintiff's counsel criticized Dr. Ponzio's expert opinion, arguing it was not based on the facts and evidence produced and did not comport with common sense. Counsel commented on the fee Dr. Ponzio

charged for his expert opinion and the amount of money he earned as an expert witness. DiMeglio's counsel objected to the "nature and tone" of these arguments, asserting that plaintiff's counsel was "besmirching" Dr. Ponzio.

Counsel did not use any disparaging or inappropriate language, improperly distort the evidence, or attempt to mislead the jury or appeal to their sympathies. See Henker v. Preybylowski, 216 N.J. Super. 513, 518-19 (App. Div. 1987); Geler, 358 N.J. Super. at 470-71. Counsel's remarks were fairly aimed at discrediting the defense expert within the bounds of the facts and evidence adduced. Moreover, the trial court properly charged the jury regarding expert testimony, and the jury's freedom to accept or reject all or part of any expert's opinion. The record supports the trial court's assessment that none of counsel's comments were inflammatory; rather, the remarks were within the bounds of appropriate advocacy based on the evidence presented. We discern no abuse of the trial court's discretion in denying a mistrial based on counsel's closing remarks.

## C.

## Motion for New Trial

We review a motion for a new trial by applying the same standard that governs the trial courts. Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J.

A-2567-23

506, 522 (2011). Under this standard, the jury's verdict will only be disturbed if "it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a). "The courts of this State have long adhered to the cardinal principle that '[i]t is within the sole and exclusive province of the jury to determine the credibility of the testimony of a witness.'" Morales-Hurtado v. Reinoso, 457 N.J. Super. 170, 190 (App. Div. 2018) (quoting Rodriguez v. Wal-Mart Stores, 449 N.J. Super. 577, 590 (App. Div. 2017)) (internal quotation omitted). We give considerable deference to the jury's verdict, Risko, 206 N.J. at 521, and as a result, a new trial will only be granted if the outcome is "shocking to the conscience of the court." Ibid. (quoting Kulbacki v. Sobchinsky, 38 N.J. 435, 456 (1962)). A miscarriage of justice occurs where there is a "manifest lack of inherently credible evidence to support the finding, obvious overlooking or undervaluation of crucial evidence, [or] a clearly unjust result." Id. at 521-522 (alteration in original) (quoting Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996)). Applying these legal principles to the facts of this case, we are unpersuaded that the trial court erred in denying DiMeglio's motion for a new trial.

DiMeglio contends the trial court erred in not setting aside the jury verdict and ordering a new trial for two reasons: (1) the evidence supported a finding

13

in DiMeglio's favor on liability and damages; and (2) the finding that plaintiff was not negligent was against the weight of the evidence. The trial court rejected these arguments, finding the jury's credibility assessment was entitled to substantial deference, and concluding that ample evidence existed to find DiMeglio negligent. We discern no error in the court's denial of the motion for a new trial.

As the trial court correctly noted, there were different scenarios of how the accident may have occurred. However, the jury credited plaintiff's testimony that he was not exceeding the speed limit as he approached DiMeglio's vehicle in the left lane, and the impact with DiMeglio's vehicle could barely be felt. DiMeglio's testimony that she only felt one impact was consistent with plaintiff's testimony.

Moreover, DiMeglio testified at trial that she slowed down as she approached the U-turn. Contrary to this testimony, on the date of the accident, she told Officer Flacker that she had stopped in the roadway prior to any impact. DiMeglio confirmed this statement during her deposition. The record supports that DiMeglio had at least begun to make the U-turn before stopping because, when Walachy's vehicle slammed into the back of plaintiff's vehicle, DiMeglio's vehicle was propelled across two lanes of traffic. Furthermore, the trial record

supports the conclusion that the jury "apparently did not find [DiMeglio's] testimony [that she had slowed down and did not stop] credible in light of all the other evidence in the case."

The court also rejected DiMeglio's argument that she was not the proximate cause of plaintiff's injuries. "Proximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court." Scafidi v. Seiler, 119 N.J. 93, 101 (1990). The jury concluded that plaintiff was not negligent and therefore, "could not have done more to avoid the crash." Although plaintiff's injuries occurred when Walachy's vehicle collided with plaintiff's vehicle, the evidence supported the jury's conclusion that plaintiff's vehicle was in the position it was in because of DiMeglio's actions. The chain of events was caused by DiMeglio initially slowing down to make an illegal U-turn and then stopping in the left-hand lane of a busy roadway. This conclusion was also well-supported by the competent substantial evidence.

DiMeglio contends that by finding plaintiff liable, the jury did not follow the law as instructed, citing Dolson, 55 N.J. 2, and Jones v. Bennett, 306 N.J. Super. 476 (App. Div. 1998), to support this contention. We agree with plaintiff, however, that Dolson and Jones are factually distinguishable from the present case. Unlike the present case, in Dolson, there was no evidence that Dolson was

15

negligent by stopping suddenly or attempting to make an illegal turn. 55 N.J. at 11-12. The <u>Dolson</u> plaintiff's vehicle was hit by defendant after plaintiff came to a complete stop before making a legal turn. <u>Id.</u> at 9-11. Likewise, in <u>Jones</u>, there was no evidence that the driver of the stopped vehicle, was negligent when her car began experiencing mechanical issues, causing her to come to a complete stop on the highway. 306 N.J. Super. at 482. In both cases, the following vehicles had sufficient time and opportunity to avoid the stopped vehicles.

Finally, DiMeglio contends a new trial is warranted because plaintiff improperly testified regarding lost earning capacity. This contention is without merit. Plaintiff did not testify regarding any diminished earning capacity, and as the trial court noted, there was no evidence of monetary loss presented. Therefore, DiMeglio did not establish "a miscarriage of justice," justifying a new trial. <u>Risko</u>, 206 N.J. at 522.

## D.

### Motion for Remittitur or New Trial

DiMeglio contends the trial court erred in denying her motion for a remittitur or a new trial because the jury's award of $500,000 damages, with $325,000 attributable to DiMeglio, was excessive, disproportionate to the injury,

and shocking to the judicial conscience. In denying DiMeglio's motion to reduce the jury's award or for a new trial, the trial court found that:

> [P]laintiff sustained serious, permanent injuries. The treatment was difficult and long. Eventually, [plaintiff] had to have surgery. He had to have a course of physical therapy and he continues to perform exercises so that he can function.

The trial court correctly declined to modify the jury's verdict or grant a new trial on these grounds.

We recognize the "substantial deference [that] must be accorded [to] a damages award rendered by a jury." Graphnet, Inc. v. Retarus, Inc., 250 N.J. 24, 36 (2022) (quoting Orientale v. Jennings, 239 N.J. 569, 589 (2019)). "That deference can be overcome only if a defendant establishes by clear and convincing evidence 'that the award is a miscarriage of justice.'" Ibid. (quoting Cuevas v. Wentworth Group, 226 N.J. 480, 501 (2016)) (internal quotation omitted). Simply because an award is "substantial does not necessarily mean it is excessive and a miscarriage of justice; so long as a jury could rationally have reached the verdict from the evidence presented, it will be upheld." Id. at 37. Trial and appellate courts "must exercise the power of remittitur with great restraint." Cuevas, 226 N.J. at 499.

A-2567-23

In the present case, plaintiff suffered injuries to his radial and carpal tunnel nerves and lateral epicondylitis in his right arm. After repeated efforts at physical therapy, plaintiff's injuries required "painful and invasive surgery," which, as the trial court described, involved cutting "all the way down to the bone through many layers of muscle in [plaintiff's] forearm." The recovery was long and painful, resulting in continuing pain and issues for several years. Thus, the trial court properly rejected DiMeglio's argument that because the sustained injury was in plaintiff's non-dominant arm, he was able to return to full-time work and perform his daily activities, the damages award was shocking to the conscience and therefore should be reduced or a new trial ordered. "[C]loaked in a presumption of correctness," the trial record fully supports the court's denial of remittitur or a new trial based on the jury's damages award.

E.

Motion for Final Judgment

DiMeglio contends the trial court erred in applying the offer of judgment under Rule 4:58-1 because it had been withdrawn and therefore did not apply, or alternatively, was nullified because it was filed before the end of discovery. DiMeglio further argues the court erred in applying the offer of judgment rule because it created an undue hardship and was unjust as applied. Lastly,

18

DiMeglio argues the court erred in awarding attorney's fees to plaintiff's counsel. These arguments are without merit.

"The offer of judgment rule provides that where[] . . . a defendant does not accept a plaintiff's pre-trial settlement offer and the ultimate verdict in plaintiff's favor exceeds 120% of the offer, [attorney's] fees and other trial costs are recoverable by [] plaintiff." Wiese v. Dedhia, 188 N.J. 587, 589 (2006); R. 4:58-1. The rule further sets forth the consequences of non-acceptance of a plaintiff's offer:

> If the offer of a claimant is not accepted and the claimant obtains a verdict or determination at least as favorable as the rejected offer or, if a money judgment, in an amount that is 120% of the offer or more, excluding allowable prejudgment interest and counsel fees, the claimant shall be allowed, in addition to costs of suit: (1) all reasonable litigation expenses incurred following non-acceptance; (2) prejudgment interest of eight percent on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later, but only to the extent that such prejudgment interest exceeds the interest prescribed by R. 4:42-11(b), which also shall be allowable; and (3) a reasonable attorney's fee, which shall belong to the client, for such subsequent services as are compelled by the non-acceptance, such fee to be applied for within [twenty] days following entry of final judgment and in accordance with R. 4:42-9(b).
>
> [R. 4:58-2.]

The rule was intended as a means to encourage "early out-of-court settlement of . . . claims that . . . ought to be settled." Wiese, 188 N.J. at 593.

In the present case, on March 26, 2021, plaintiff made an offer of judgment to DiMeglio in the amount of $100,000. Defendant did not respond to the offer. Pursuant to R. 4:58-1(b), the offer expired in ninety days, on June 25, 2021, and discovery ended on April 1, 2022.

Following the jury's verdict, the trial court granted plaintiff's application to apply the offer of judgment rule, imposing on DiMeglio monetary consequences of her non-acceptance of the offer under the rule, and awarding attorney's fees, eight percent pre-judgment interest on the final judgment and litigation expenses since the close of discovery on April 1, 2022. The court entered final judgment against DiMeglio in the amount of $473,373.57, consisting of: (1) $325,000 for pain, suffering, disability and lost of enjoyment of life; (2) $74,727.52 for prejudgment interest through March 15, 2024 pursuant to Rule 4:42-11; (3) $13,226.05 in costs and expenses pursuant to Rule 4:58-2; and (4) $60,420.00 in attorney's fees pursuant to Rule 4:58-2.

The trial court properly rejected DiMeglio's argument that because the offer of judgment had expired, plaintiff could not avail himself of the consequences of non-acceptance. This argument contravenes the intent of the

rule and its clear language. The rule provides that if an offer of judgment is not accepted within the time frame allotted, and the offer expires, a verdict in excess of 120% of that offer triggers the consequences under the rule of non-acceptance. R. 4:58-2. There is no dispute that: (1) DiMeglio did not accept plaintiff's offer of judgment within the prescribed time frame; and (2) the verdict was in excess of 120% of the offer. Therefore, the offer of judgment rule was triggered.

DiMeglio next argues that the offer of judgment rule should not be applied in these circumstances because the offer was issued before the end of discovery. DiMeglio offers no legal support for this contention. Moreover, the purpose of the rule is to stimulate and encourage the early settlement of claims. Therefore, this argument lacks merit as well.

Finally, DiMeglio contends the court erred in awarding $60,420.00 in attorney's fees to plaintiff's counsel because the fees were "duplicative" and excessive. DiMeglio argues counsel's hourly rate was disproportionate to the demands of this "simple negligence case."

Because the trial court had authority to compel attorney's fees under Rule 4:58-2, we review that decision under the abuse of discretion standard. J.E.V. v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012). The trial court determined

the lodestar amount by reviewing the hours reasonably expended on the case and the hourly rate sought.  R.M. v. Supreme Court of New Jersey, 190 N.J. 1, 8-11 (2007).  The court reviewed the factors set forth in RPC 1.5(a) and determined a reduction in the hourly rate and a modification in the amount of fees sought was more reasonably related to the legal work performed.  The trial court appropriately exercised its discretion in determining a reasonable fee award and we discern no abuse of that discretion.

To the extent we have not addressed any of DiMeglio's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division